No. 77.—John Doe *ex dem.* Simeon B. Cofer, admin'r of Absalom Jackson, dec., plaintiff in error, *vs.* Richard Roe, casual ejector, Philip Thurmond, tenant in possession, and John Flanagan, co-defendant, and defendant in error.

The statute of limitations does not commence against an administrator, until the grant of his letters, in cases where the intestate died before the adverse possession of the defendant began.

The fact of death may be proven by presumption, as well as by direct evidence.

Where a person goes abroad and is not heard of for a long time, the presumption of the continuance of life ceases at the end of seven years from the period at which he was last heard of.

The presumption of the duration of life, with respect to persons of whom no account can be given, ends at the expiration of seven years from the time when they were last known to be living.

This was an action of ejectment, verdict for the defendant, and motion for a new trial, which was refused by the court below. For the facts of the case, and the grounds of error taken, the reader is referred to the opinion of the Supreme Court.

William L. Mitchell, and Howell and Thomas R. R. Cobb, for the plaintiff in error, relied upon the following points and authorities :

1st. Real estate is assets in the hands of the administrator, and on the same footing as personal property as to distribution.—*Prin. Dig.* 225, 233, 241.

2d. Heirs at law cannot maintain trover for personal property.—*Heirs of Bostwick* vs. *Beal, Ex'or,* in Clark Superior Court.

3d. The executor can maintain trover against the heir.—*Montague* vs. *Sandwich,* 7 *Mod.* 99 *and* 6 *Mod.* 151.

4th. In a contest between the administrator and heirs, which is entitled to recover and hold the land? Certainly the administrator.—See the statutes in *Prince* before cited.

5th. The statute of limitations does not begin to run, until letters of administration are obtained by some one.—1 *Chitty's Genl. Prac.* 765; *Conyer's Adm'r* vs. *Kennon,* decided at Decatur.

6th. The claimant or lessor of the plaintiff must be clothed with the legal title.—*Roscoe,* 489, at top, 99 *Litt. Law Lib.; ib.* 508, at top, 113 *Litt. Law Lib.*

7th. Absence for seven years and not heard of is evidence of the fact of death, though not of the exact time thereof within the seven years.—*Nepean* vs. *Doe, Smith's Leading Cases,* vol. 2, p. 339, at top, 321 in brackets; 34 *Littell's Law Lib. vide Statute,* 19 *Car.* 2, c 6.

8th. The possession must be such as to amount to an ouster, the general principle being that the possession must, in its nature, have such notoriety that the owner may be presumed to have notice of it, and of its extent.—*See Kennebec Purchase* vs. *Call,* 1 *Mass. Rep.* 483; *The same* vs. *Springer,* 4 *ib.* 416; *Pray* vs. *Pierce,* 7; *ib.* 381. But how can the owner have or be presumed to have any such notice, when he is dead? His only representative is the administrator, and he can have no such notice till after the grant of his letters.—34 *Litt. Law Lib.* 415.

9th. By 3 *and* 4 *W.* 4, *S.* 6, it is provided that the administrator shall claim at

if there had been no interval between the death and the grant of administration.— 34 *Litt. Law Library*, 400 *n.* Hence, it is fairly inferable that the law was otherwise up to the enactment of that statute, and that up to that time, the administrator claimed, and could claim, only from the grant of his letters of administration.

B. H. OVERBY, for the defendant in error, relied upon the statute of limitations, (*Hotchkiss*, 534 ; *Adams*, 45,) and took the ground that it was not shown on the trial below that Jackson, the intestate, was dead before the adverse possession of defendant, and those under whom he claimed. The possession of the defendant was adverse.—13 *John. Rep.* 118.

Real estate cannot be distributed by an administrator under our statutes.—*Prince*, 233, 541, 241 *and* 247.

### *By the Court*—NISBET, Judge.

The facts material to be stated in this case are as follows : the plaintiff below introduced in evidence, a copy grant from the State of Georgia, for the land in dispute, to his intestate, Absalom Jackson, dated in 1787 ; also his own letters of administration, dated in 1841. It was proved that the plaintiff's grant covered the land, and that it was in possession of the defendant when the action was brought. The plaintiff's intestate was proven to have been seen in Jackson county, (the county where the suit was pending,) in 1794, and had not been heard from since that time.

The defendant relied upon the statute of limitations, and introduced a grant from the State to one William Mathews, dated in 1819, and a chain of title to himself, from Mathews. He further proved that he, and those under whom he claimed, had been in possession of the land for more than seven years next preceding the institution of the suit.

Upon the trial, Judge Hillyer presiding, the counsel for the plaintiff requested the court to instruct the jury, that the statute of limitations did not commence running against the plaintiff until the grant of his letters of administration ; the court declined so to do, but instructed the jury, that the defendant was protected by the statute of limitations, if they believed that the heirs of Absalom Jackson, the plaintiff's intestate, were barred.

The jury found, under this charge, for the defendant. A new trial was then moved, upon the ground mainly, that the court erred in its charge, touching the statute of limitations, and because the court declined to instruct the jury, that the statute of limitations did not commence to run until the grant of letters of administration to the plaintiff.

The court, Judge Dougherty presiding, having heard argument, refused the new trial, affirming the opinion of Judge Hillyer, with the additional opinion, that there was not sufficient evidence of the death of the plaintiff's intestate, before the commencement of the defendant's adverse possession. Upon these decisions of Judge Dougherty, the errors are predicated.

This court decided in the case of *Conyers* and *Kennon*, brought up from the county of Newton—a case whose facts were substantially the same with those in this—that the statute of limitations does not commence to run against a decedent, until the date of the letters of the administration upon his estate, provided he is proven to have died before the commencement of the defendant's adverse possession. Upon far-

ther argument, and more mature consideration, we are unwilling to disturb that opinion. The court below ruled, that if the heirs were barred, the statute protected the defendant; that is, that the statute begins to run from the death of the intestate, and not from the time of granting letters of administration upon his estate. It may be a serious question, whether, in Georgia, the heirs can bring ejectment at all. We are not now called upon to decide whether they can or not. But if they can, and they recover, their title is not good against an administrator. In England, the title of the administrator to personal property is good against the heir. Trover will lie in favor of an executor against an heir.—7 *Mod*. 99 ; 6 *Mod*. 151.

Our law has abolished, utterly, the distinction between personal and real estate, as it obtains in England; indeed, it has changed the whole British doctrine, as to the descent of real estate. Personalty and realty, as to distribution, and as to liability to pay debts, are placed by our statutes upon the same footing. The abolishing of primogeniture rights, and the equal divisibility of estates among all the heirs, were beyond all question, the great ends proposed to be accomplished by our Legislature.

By the act of 1789, in *respect to distribution*, real and personal estate, are declared to be "*precisely* on the same footing."—*Prin. Dig*. 225. By the act of 1804, which is amendatory of the act of 1789, it is declared, "when any person holding real or personal estate shall depart this intestate," the said estate, *real and personal*, shall be considered as *altogether* (that is, as we believe, for all purposes) *of the same nature and upon the same footing*." The statute goes on to point out the manner of the distribution.—*Prin. Dig*. 233. Thus, at a single blow, leveling all the distinctions of the English law between personal and real estate. By the act of 1812, the manner of dividing real estate, by application to the Ordinary, is prescribed.—*Prin. Dig*. 241. · The effect of these statutes is to give to the administrator the same powers over real estate that he has over the personalty, and for the same purposes, to wit : first, payment of debts ; and secondly, distribution. I infer so, from the general powers conferred upon him, as to estates, from the fact that it is expressly made his duty to pay the debts of the estate, (*Prin. Dig*. 229,) from the fact that he is himself authorized to apply to the Ordinary for an order to distribute real estate, (*Prin. Dig*. 241,) and from the fact that before a distributee is entitled to his share of the realty, he must give bond and security to refund his relative proportion of debts, which may be subsequently established against the estate.—*Prin. Dig*. 241. Once, however, admit that the law of the land makes no distinction between personal and real estate, but, on the contrary, abrogates all previous distinctions, by declaring them to be all of the same nature, and the same rights and duties, as to both follow as a necessary consequence.

The title to the personal property of his intestate devolves upon the administrator in England ; he can sue for it and recover it even against the heir ; he can aliene or encumber it. The reason is, that the law casts upon him the duty of paying the debts, and the personalty is assets for that purpose.—*Williams on Ex*. 430–1–2, 670 ; 4 *T. R*. 625. 1 *Atk*. 463. Now we believe the same power, in relation to real estate,

is devolved upon the administrator in Georgia. Thus, we think, the right of the administrator to sue is established, and as the legal estate is in him, it may be well questioned, whether there remains in the heirs such an interest or title as would sustain an action. The title of the heirs is subordinate to that of the administrator; they have not even an interest until the debts are paid. The law lays hold of the legal estate, and deposits it in the hands of its own appointed agent, for the very purpose of protecting it against the title of the heirs, in order that the debts of the ancestor may be certainly paid; until administration had, the legal estate is in abeyance, and when granted, it devolves upon the administrator, and so soon as the estate is administered, the paramount property may be asserted by the heirs, in all the estate of the intestate not applied to the payment of debts. Unless the title of the administrator be better and stronger than all others, then is it true, that the law has clothed him with no sufficient power to execute his trust; and then is it also true, that the law affords to the creditors of intestates no sufficient security for the payment of their debts. It is no reply to this reasoning, that there may be, in fact, no debts to pay. *Non constat* that there are no debts. The law presumes debts where an estate has not been settled by administration. Moreover, the court upon the trial of an ejectment, between an administrator and a stranger holding adverse possession, cannot inquire into the condition of the estate, or settle the equities between the administrator, the heirs, and the creditors.

An executor derives his title to the effects of his testator from the will, and, therefore, they vest in him from the moment of his death. The administrator derives his title wholly from the Ordinary; he has none until his letters are granted, and the property of the deceased vests in him only from the time of the grant.—*Williams on Ex.* 431; 5 *B. & A.* 745, 746. Accordingly, no right of action accrues to an administrator, until he sues out letters of administration.—*Williams on Ex.* 432; 5 *B. & A.* 204; 2 *Salk.* 421. This proposition, however, respecting the vesting of an administrator's interest, must be taken with some qualification; for, for particular purposes, the letters of administration *relate* back to the time of the death of the intestate. So an administrator may have an action of trespass or trover, for the goods of the intestate, taken by one before the grant of his letters.—2 *Roll. Abr.* 399 title *Relation,* (*A*) *Williams,* 432.

So in ejectment by an administrator, the demise may be laid on a day after the intestate's death, but before administration granted, for the administration, when granted, will *relate* back, and show the title to have been in the administrator, from the death of the intestate.— *Williams on Ex.* 432; 8 *East.* 410; *Wheat. Selw.* 5 ed. 811. This point was expressly so decided by the Court of K. B. in Ireland, in *Patten* vs. *Patten,* 1 *Alcock and Napier,* 493.

In *Pratt* vs. *Swaine,* 8 *B. & C.* 287, Bayley, Justice, says: " Where letters of administration have been granted, the administrator is entitled to all the rights which the intestate had, at the time of his death, vested in him; but no right of action accrues to the administrator until he has sued out the letters of administration." These authorities settle two points in this case: the first is, that no right of action accrues to

an administrator, until the grant of his letters ; and the second is, that when granted, they relate back to the death of the intestate. If the latter proposition be true, we do not see how there can be any such cause of action, or right of entry, in the heirs, which, if neglected un- til the statute has run its course, will preclude the rights of the ad- ministrator. Such a right in the heirs, is incompatible with the title of the administrator, accruing by relation at the death of the intestate.

The former is indispensable to the correctness of the judgment which we are about to render in this case. By our statute of limitations, (*Prin. Dig.* 573,) the action of ejectment, to avoid the bar, must be brought within seven years next after *the title and cause of action* shall or may descend or accrue. This statute is substantially the same with the English statute of James, except as to the term. The words, *title and cause of action*, are found in both, and in precisely similar con- nection. The words, *cause of action*, in the English statute, have been construed to imply not only a right of action, but also that there is some person in existence who is qualified to institute process. There must be a person to sue. In accordance with the maxim of the civil law, *Contra non valentem agere non currit prescriptio*, when there is no person to sue no laches can be imputed ; and applying in such case the statute of limitations would be extreme injustice. In the case of an administrator, there is no person to sue until grant of letters ; and therefore the statute of limitations does not commence running until that time. This we hold now to be the law, settled upon the highest authority. The leading case on this subject is *Murray* vs. *The East India Company*, reported in 5 *Barn. and Ald.* 204. See also *Ang. on Limit'ns*, 55–6–7 ;. 8 *Cranch.*, 84 ; *Williams Ex'rs*, 432 ; 2 *Salk.* 421 ; 1 *Mylne and Craig Ch. R.* 118 ; 15 *Con. R.* 149 ; 9 *Leigh* (Virg.) *R.* 79 ; 7 *H. and Johns.* (Mary- land) 14 ; 4 *ib.* 393 ; 2 *Hayw.* (N. C.) 378 ; 13 *Wend.* 267 ; 4 *McCord*, 423 ; 2 *Bailey*, (S. C.) 595.

If, however, the statute has once begun to run in the lifetime of the testator or intestate, it does not cease running during the period which may elapse between his death and the time at which a personal repre- sentative is constituted and duly qualified. The testator, or intestate, must have died before the statute commenced running, else the rule above laid down does not apply. And with good reason. If the testa- tor, or intestate, was in life at the time when the adverse possession be- gan, he might have brought his action. There was not only a cause of action, but a person *in esse*, capable of instituting process ; and, failing to do so, *laches* is justly imputable to him ; and the statute will be a protection to the tenant.—*Ang. on Limit'ns*, 57 ; 4 *Mees. and Welsb.* 42 ; 3 *Mylne and Craig Ch. R.* 455 ; 3 *McCord R.* 455. '

In the case before us, the suit was instituted within seven years from the date of the plaintiff's letters. It only remains for us to inquire whether the court below erred in deciding that there was no sufficient evidence of the death of the intestate before the commencement of the defendant's adverse possession. The evidence is, that he was seen in the county of Jackson in 1794, and that he had not been heard of since that time. The defendant's grant bears date in 1819, and he was proven to have been in possession more than seven years before the suit was instituted. Supposing that the defendant's possession began at the

date of the grant under which he claims, then it was necessary that the plaintiff show that his intestate died prior to 1819.

The court below, upon this point, holds the following language :

" Abandoning that test, and looking to the proofs, it appears that he was in Jackson county in 1794. It is not pretended that he ever lived in Jackson county ; there is no proof where he lived, and his absence from Jackson county for so long a time cannot furnish any presumption of his death." We are of opinion, that having been seen in the county where the land lies in 1794, and a witness who saw him then testifying that he had not been heard of since, raise the presumption of his death. These facts afford *prima facie* evidence of his death, which is subject to be rebutted. The presumption of death in this case is made stronger by the fact, which appears to have been proven, that at the time he was last seen he was about fifty years of age. The fact of death may be proven by presumption, as well as by direct evidence.—*Best on Presumptions*, 191. When a person goes abroad, and is not heard of for a long time, the presumption of the continuance of life ceases at the end of seven years from the period at which he was last heard of.—*Best*, 191 ; 2 *Camp.* 113 ; 15 *East*, 293 ; 6 *Vesey*, 606 ; 6 *Sim.* 443 ; 3 *Bro. C. C.* 510.

In reply to this proposition, it may be said that it contemplates, first, proof of going abroad—a departure from the realm—and, afterwards, proof of not being heard of for seven years ; and that, in this case, the intestate was not proven to have gone abroad, that is, in this country, beyond the limits of the State of Georgia. The rule, however, goes farther. The presumption of death is raised in cases where persons are away from their usual place of resort, and have not been heard of for seven years. Such proof is *prima facie* evidence of death. In *Doe* vs. *Jesson*, 6 *East*, 85, Lord Ellenborough is reported to say, " that the presumption of the duration of life, with respect to persons of whom no account can be given, ends at the expiration of seven years from the time when they were last known to be living." This rule fully embraces the case now being considered. The intestate was last known to be living in 1794. In 1801, therefore, seven years from that time, according to Lord Ellenborough, the presumption of his being alive ceases. The case of *Doe on the demise of Lloyd and another* vs. *Deakin and another*, (4 *Barn. and Ald.* 433,) is very much like this case. There it became necessary for the plaintiff to prove the death of a person who had been tenant for life. The tenant had been a wanderer, but returned in 1804 to the neighborhood where his life estate lay, remained a short time, and went away again. After that time he had not been seen in the neighborhood. These facts were deposed to by a person who resided near the spot ; and the judge directed the jury that this was *prima facie* evidence from which they might presume his death, and they, accordingly, found a verdict for the plaintiff.—*Best*, 191 ; 4 *B. & A.* 433 ; 6 *East*, 85 ; 1 *Blac. R.* 404 ; 7 *Vesey*, 590 ; *Smith's Leading Cases*, vol. 2, p. 339.

We are of the opinion, therefore, that the death of the plaintiff's intestate was proven to have taken place in 1801, and before the statute commenced running in favor of the defendant, that is, before the beginning of his adverse possession.

Now, if it be said that this case gives a denial to the idea that the

statutes of limitation are favored because they are statutes of repose; if it be said that this is precisely the case where possession undisputed ought to presume a title; why, then, we are constrained to admit that these things are true; yet the reply is: the first duty and highest ambi-- tion of this court is to administer the law as it is. How far a court of equity has power, in such cases as this, to grant relief, we are not called upon to determine. Here about forty years elapsed after the death of the plaintiff's intestate before the date of his letters. This is the very case where a former administration, consistently with general justice, might be presumed, from length of time. O'Neal, Judge, in *Witt* vs. *Elmore*, 2 *Bailey* (S.C.) *R.* 595, hints at the existence of such a rule. We are not satisfied that there is such a rule, but we are satisfied that there ought to be.

The judgment of the court below must be reversed.