THE CHATTANOOGA, ROME AND COLUMBUS RAILROAD COMPANY v. OWEN, and vice versa.

1. Under the ruling in *C. R. & C. Railroad Co.* v. *Huggins*, this term, 89 *Ga.* 494, the court did not err in overruling the motion to dismiss the motion for a new trial.
2. The declaration set forth a cause of action, and there was no error in overruling the demurrer thereto.
3. Evidence that there was no signal or that the plaintiff saw none indicating that there was danger of collision, was relevant and admissible, under the allegations in the declaration.
4. Under the explanation by the presiding judge touching the time-table and the cross-examination of the plaintiff in reference thereto, there was no error.
5. It does not affirmatively appear that the court erred in refusing to rule out on defendant's motion rules of the company which the defendant itself had introduced and which the plaintiff had referred to as evidence and wished to keep before the jury. The fact that none of the rules were referred to in the declaration and that the plaintiff testified he was ignorant of any of them, would not render them irrelevant.
6. Taking together all that the court charged upon the burden of proof, the negligence of the parties respectively, the fault of the plaintiff and his duty to avoid the consequences of the defendant's negligence, the charge as to these matters was substantially correct.

7. Though it is not accurate for the court to state to the jury that they are the judges of what is in evidence, where the context shows that the meaning intended was that the jury were the judges of what the evidence proved, the verbal inaccuracy was not misleading.

8. The charge of the court as to the measure of damages for total or partial permanent disability occasioned by the injury, was not accurate in language and expression, nor clear in import and substance. Its obscurity and incompleteness may have misled the jury; and this court being unable to ascertain that it did not have this effect, and the amount of the recovery being very large, the danger that injustice may have been done by this portion of the charge is so great that a new trial ought to be had, notwithstanding the presiding judge considered that he conformed to what counsel for both parties insisted upon and contended for before the jury. If his purpose was to render the position of counsel intelligible to the jury, the strong probability is that he did not succeed in so doing. In *Chattanooga, Rome & Columbus Railroad Co.* v. *Clowdis*, this term (*ante*, 258), the charge on this same topic had very considerable infirmity, and could be treated as harmless only because it was manifest from the evidence that it did not mislead the jury.

9. Jurors should not be instructed that they can act upon their private and personal knowledge of the character of the witnesses who testify in the cause on trial, and it is error for the court to instruct them that they can consider such character if they know it. The case of *Rogers* v. *King*, 12 *Ga.* 229, does not rule anything on this question save by a suggestion in the head-note, which is entirely *obiter* and not founded either upon the facts of the case or upon anything ruled or decided by the court in its opinion. The cases of *Anderson* v. *Tribble*, 66 *Ga.* 584, *Head* v. *Bridges*, 67 *Ga.* 236, and *Howard* v. *The State*, 73 *Ga.* 84, are unsound in so far as they relate to this point, and they are hereby to that extent reviewed and overruled. If a juror has any material information or knowledge respecting the facts of a case, of which either of the parties desires to take the benefit, he should be put upon the stand to testify as a witness. Proffatt, Jury Trials, §369; Thompson and Merriam, Juries, §216; Rapalje, Law of Witnesses, §191; Starkie, Evidence (10 Am. ed. from 4th London ed.), *816; Taylor, Ev. §1379; Best, Ev. §187; Schmidt *v.* N. Y. Mut. Fire Ins. Co., 1 Gray, 529; Wharton *v.* The State, 45 Tex. 2. See *Mitchum* v. *The State*, 11 *Ga.* 633; *Fox* v. *The State*, 9 *Ga.* 373. Bacon's Abridgment (vol. 5, p. 351) treats of reasons anciently operative for requiring the jury to come from the vicinage, some of which reasons are no longer applicable, since controversies are now determined, not wholly or in part by what the jurors know of the facts, but solely by what the evidence establishes.

August 23, 1892. Argued at the last term.    *Judgment reversed.*

New trial. Practice. Railroads. Negligence. Evidence. Damages. Charge of court. Jurors. Before Judge MADDOX. Chattooga superior court. March term, 1891.

1. Owen sued the railroad company for damages from personal injuries, and obtained a verdict for $17,500. The defendant moved for a new trial; the motion was overruled, and exceptions were taken to that ruling, and to the overruling of a demurrer to the declaration. The plaintiff excepted to the overruling of his motion to dismiss the motion for a new trial. The motion to dismiss (the recitals of which were verified by the court) was, in substance, as follows: The verdict was rendered on March 13, during the March term of Chattooga superior court. On the next day the court by order took a recess, to reconvene on April 18. Prior to this adjournment no motion to set aside the verdict was made or filed by the defendant, and no order was granted for this purpose or for the allowance of further time to make and file such motion. On March 23, Floyd superior court, in the same judicial circuit, convened for its March term, and continued in session until April 18, the judge of the circuit presiding all the while. On April 6, the defendant presented the original motion for a new trial and brief of evidence to the judge at his home in Floyd county, in the evening after court had adjourned for the day; and the judge approved the motion and brief, and granted a rule *nisi*. On the next day the motion and brief were filed, and plaintiff's counsel acknowledged service of the motion and rule. On April 10, the defendant presented to the judge, during the dinner recess of court, an amendment to the motion, which was approved, served and filed on the same day. Floyd superior court took a recess from April 17 to April 20, during which recess the judge, on Saturday the 18th, went from

Rome to Summerville and passed an order continuing the hearing of the motion to April 30, at Rome. No order was taken for an adjourned term of Floyd superior court, which reconvened on Monday the 20th, in continuation of the regular March term. The grounds for dismissal are, that the motion for new trial was not made during the term when the verdict and judgment were rendered; that when the motion and brief were made and approved, Chattooga superior court was not in session, but the judge was holding court in another county; that under the facts the judge had no jurisdiction to consider and approve the motion or brief, or grant the rule *nisi;* and that plaintiff or his counsel never assented to any of said proceedings, or waived any of the defects or irregularities.

2. The declaration alleged the following: On June 6, 1890, petitioner was employed by defendant as fireman on one of its engines, under the direction and orders of the engineer Williams. The engine was drawing a through freight-train from Carrollton, Ga., to Chattanooga, Tenn. The engine and train reached Rome in the afternoon on its proper time and so registered, and then and there received orders from the proper authorities of defendant to run on to Lyerly, and there take the side-track to allow an excursion train coming from Chattanooga to pass upon the main line. At Rome no notice was given petitioner or the engineer or other member of the crew upon the through freight-train, of the track between Rome and Lyerly being occupied by another train, or of its being obstructed or dangerous in any manner; but from said order and their knowledge of the schedule of trains, petitioner and the other persons of the crew were necessarily led to believe that said portion of the track was clear and safe. Under said order petitioner's train proceeded north toward Lyerly, and was approaching Taliaferro,

a station of defendant a mile or two south of Lyerly, and at which station petitioner's train was not required nor allowed by the rules to stop, and which is immediately approached from the south by a short, sharp curve, where the road-bed is cut out of the base of a steep hill. When running at its usual and necessary speed to comply with said order, petitioner's train, without signal, notice or warning of any kind of the presence of another train or obstruction on its track, ran into and telescoped the rear end of a local freight-train of defendant, which was standing on the main track at Taliaferro, completely blocking the way and giving no notice or warning of any kind to approaching trains of its presence; this local freight-train was several hours behind time, and by schedule should then have been in Chattanooga and off the road. Had petitioner been looking forward at the moment of rounding the curve, he could have seen the standing train only an instant before the collision; as it was, his first notice of danger was the crash. When caught under the wreck petitioner could in a short time have been rescued from his frightful position and saved from much of his torture and injuries by the agents of defendant, who were in charge of the local train, all of whom were uninjured; but these agents of defendant abandoned him to his horrible fate, making no effort to rescue him, not only neglecting to do anything for his relief but even actively preventing and deterring others present from making any effort for his relief, when such others were anxious to do so and could have succeeded had they not been so deterred. Petitioner was in no way blamable or responsible for his injuries; was guilty of no negligence, and could not have avoided the injuries by the most extraordinary diligence, but the injuries were the result solely of the gross negligence of defendant's servants and agents; and he charges that the following

acts of defendant and its agents and servants were grossly negligent: (1) The giving of the order at Rome to proceed to Lyerly, and the failure to give notice or warning of danger ahead, and the failure to make any effort to remove such danger, and the failure to make any effort to give petitioner's train during its progress from Rome to Lyerly any notice of the presence on the track of the belated local train. (2) The permitting by defendant the local train under such circumstances to be on its main track and upon the right of way of petitioner's train, after having given said order to the last mentioned train. (3) The stopping of the local train out of its time at Taliaferro on the main track, when regularly petitioner's train was then due. (4) The failure of defendant's servants and agents in charge of the train to send out a flagman or some signal to warn approaching trains of its presence. (5) The failure of the last mentioned servants and agents to rescue or attempt to rescue petitioner when caught in the wreck, and active prevention of rescue at the hands of others. The declaration also set forth petitioner's age, expectancy, earnings, that he was well and strong, etc., the effects of the collision and the nature of his injuries, and his expenses for medical attention, etc.

The grounds of demurrer were : (1) The declaration did not set forth a good or sufficient cause of action. (2) It showed on its face that plaintiff was an employee of defendant, that he was a fireman on the engine that telescoped a train which was standing on the track at the station where the injury occurred, that he was not looking and did not discover the train ahead until his engine ran into it, and that had he been looking he could have discovered the train ahead sooner than he did; defendant insisting that these allegations in the declaration showed that plaintiff was an employee participating in the act which caused the injury, that he

was at fault, and that there was no allegation that this fault or negligence did not contribute to the injury.

The motion for a new trial contains the following among other grounds :

3. The court erred in allowing Ratliff to testify: "He [the agent] put out no signal nor gave any warning to the second train ; he never gave any at all; if he did, I never saw it." This testimony was objected to on the ground that there was no allegation in the declaration to warrant it, the negligence alleged being solely that of the crew of the first train on this point. From the testimony of Ratliff it appeared that Holland station is between five and six miles or three or four miles from Taliaferro station. On the day of the wreck he was at Holland as the first train going north went out. He saw no flagman put off, nor any signal left about the depot nor on the track to indicate its presence. The first train had been gone about two minutes and a half when the second freight-train passed. There was an agent at the depot in charge of the station when the first train went off and when the second one passed, and this agent put out no signal nor gave any warning to the second train, etc.

4. The court erred in allowing plaintiff to testify from the schedule or time-card, after looking at it, as follows : "The local freight which we ran into had no time at Taliaferro at all. Our time at Holland was 5.05. No. 16 on this time-table was our train. No. 14 was the local freight-train that was ahead of us. I think No. 1 was the passenger-train we met at Lyerly. No. 3 was the passenger we were to have met at Lyerly. No. 1 was the passenger we met at Lavender. We were due at Lavender at 4.26. The train we met at Lavender was the one that got to Carrollton first, was to reach Carrollton about 4 in the evening ; and the one we were to meet at Lyerly was to reach Carrollton about 9 that

night." And in refusing afterwards to allow defendant
to read from the same time-card or allow the witness to
read from it, and then allow defendant to interrogate
him thereon; the portion of the card offered to be read
and to interrogate the witness about, being this · "In
all cases of doubt take the safe side and use the greatest
care and caution." The ground of objection by de-
fendant's counsel to the testimony of plaintiff above
mentioned, is not stated. It is further complained that
the court erred in refusing to allow defendant's counsel
to cross-question the plaintiff on the time-card which he
had held in his hand and had testified from while on the
stand, plaintiff's counsel claiming the time-card as their
private property. As to these grounds the court made
the following notes : In delivering testimony about the
time trains were due, witness was giving his belief and
recollection, but said he could look on the schedule and
answer the question. He was allowed to refresh his
recollection from the time-card and identify certain
schedules thereon. No objection was made, and the
court did not refuse to allow counsel to cross-examine
the witness about the contents of the paper. Before
plaintiff had closed his case, defendant's counsel offered
to introduce in evidence the time-card on which plain-
tiff's counsel had examined the witness. It was plain-
tiff's property and had not then been offered. This the
court refused to allow, and also refused, before the time-
card was put in evidence and before plaintiff closed, to
allow the witness or defendant's counsel to read aloud
printed rules on the paper. The paper was afterwards
introduced in evidence. Plaintiff's counsel furnished
defendant's counsel with the time-card for the purpose
of cross-examination, which was not objected to by
counsel nor prevented by the court. Defendant's counsel
was prevented from reading, or having the witness read
to the jury during cross-examination, printed matter on

the same sheet below the time-card; and was also prevented from filing the paper with the stenographer during cross-examination, it being the property of plaintiff and not having been offered in evidence.

5. The court erred in refusing to rule out all evidence as to the rules of the company, because there was no charge in the declaration that any rule of the company was disregarded, plaintiff himself claiming that he had no notice or knowledge of the rules. The court did rule out all the evidence about the rules, and all of the printed rules except such as had been indicated and cited by plaintiff's counsel before the motion to rule out was made, the rule book having been placed in evidence by defendant. The court declined on defendant's subsequent motion, made during the argument, to rule out any rules which plaintiff had indicated and desired to use.

6. The court charged: "Before the plaintiff will be entitled to recover in this case, before the burden would be shifted upon the railroad company, he must show that this injury was brought about without fault on his part, or he must show you that the railroad company was negligent, or they were to blame. If he shows either one of these things, in the first place if he shows to you that he was injured by the railroad company in that wreck, if he then shows you that he was without fault himself, then the burden is cast upon the railroad company." It is alleged that this charge was error in stating that if plaintiff showed defendant was at fault, he could recover, the negligence of the company not being confined by the court to negligence bringing about the injury and as charged in the declaration; and movant further insists that the evidence must show that the negligence of defendant brought about the injury, and also fail to show negligence of plaintiff, if negligence of defendant is shown.—As to this ground the

v 90-18

judge certified that he charged, just before the matter complained of: "I charge you, in the first place, that the burden is on plaintiff to show you that he was injured by the defendant, the extent of his injuries, and that it was not brought about by his fault or negligence, but that the injuries were the result of the defendant's negligence. The company can successfully defend against him, if they can show that it was not the result of their negligence, or if they can show that plaintiff was at fault which substantially contributed to his injury, either directly or indirectly, or that he could have avoided the injury by the exercise of ordinary care; or, in other words, before the burden of proof in this case is cast upon the defendant, the plaintiff must show that the injury for which he sues, if he participated in the acts which caused the injury, that he was without fault, that it was not caused by negligence or fault of his, or he must show you that the defendant company was negligent. If he shows either one of these things, then the burden is shifted on the defendant. And if they can then show you that the plaintiff was at fault, or contributed to this injury to himself, either directly or indirectly, then the plaintiff cannot recover. Or if they show you that they have exercised ordinary care to avoid the injury, the plaintiff cannot recover, or they may show that the plaintiff could have avoided the injury by the exercise of ordinary care." The court also charged, immediately after the passage complained of: "They must establish, gentlemen of the jury, that he was at fault, or that it was not caused by their negligence, or that the plaintiff in this case could have avoided the injury by the exercise of ordinary care. Now, if the plaintiff shows to you, if he fails to show to you that he was without fault, he cannot recover. Or if the company shows that it was without negligence, or that the plaintiff could have avoided the in-

jury by the exercise of ordinary and reasonable care, or that they have exercised all ordinary and reasonable care to avoid the injury." After having fully stated to the jury plaintiff's five specifications of negligence as set out in the declaration, the court also charged: "There are five distinct grounds on which they allege the railroad company was negligent. Now, gentlemen of the jury, as I have said before, this is a question for you. You are to say, from all the evidence and circumstances that surround the case, whether the railroad company was negligent as charged in the bill or not." The court also charged at the request of defendant's counsel : " If you should find in this case that the injury to the plaintiff was not caused by the acts of negligence charged in the plaintiff's declaration, but was caused by other and different causes, the plaintiff in this case cannot recover. They must rely, gentlemen, on their declaration, the acts of negligence alleged there. If it was caused by the acts of negligence alleged in the declaration, the plaintiff could recover, if he could recover at all. If they make out a case not in their declaration, then the plaintiff would not be entitled to recover."

The court charged: "If, on the other hand, the plaintiff shows that he was without fault on his part; or shows that the defendant in this case, the railroad company, was at fault, then, gentlemen, the plaintiff can recover." This is alleged to be error for the reasons set out above, and for not qualifying the latter part by adding, after the words "at fault," the following or its substance: "and the evidence does not disclose any negligence on his part contributing to the injury." Also, because this charge ignored the force of any testimony of defendant that might have rebutted plaintiff's testimony, and virtually deprived defendant of making any defence after plaintiff had made out a *prima facie* case; and because it made defendant liable for negligence other than that

charged in the declaration.—This ground is explained
and corrected by the same additions made to the ground
last above stated, and by this charge: "If the plaintiff
has made out a *prima facie* case, then you are to look at
all the evidence on the other side and see whether the
defendant is at fault anywhere; and if they show that
he could have avoided the injury by the exercise of or-
dinary and reasonable care, or was at fault himself and
contributed to the injury, then he could not recover.
But in the event that you find that he was without fault,
that no fault of his contributed to this injury, either di-
rectly or indirectly, and you find the railroad company
was negligent, the plaintiff ought to recover." Again
the court charged: "On that point, gentlemen of the
jury, if he aided and abetted the reckless conduct, and
you find that that reckless conduct was the cause, either
directly or indirectly, of the injury, then the fireman
could not recover. If you should find that the plaintiff
knew of any reckless conduct of his engineer, which
contributed to the injury, and that the plaintiff could
have protected himself in any way by the use of ordinary
care by refusing to fire the engine, or by getting off the
train, or by reporting his engineer to the superior officers
of the railroad company, and the plaintiff failed to pro-
tect himself by the use of ordinary care, he could not
recover in this case." Again the court charged: "An
employee of the railroad company must be blameless
and without fault before he can recover. If an employee
contributes, directly or indirectly, or remotely, to any
injury which he may have received, he cannot recover."
When about to conclude the charge the court, address-
ing counsel in the case, inquired if there was anything
else, to which one of the defendant's counsel replied,
"Nothing else."

The court charged: "There has something [been] said
to you and insisted on, that you are to consider the fact

as to whether the parties failed to blow at this station.
I charge you that you are to look at the evidence and
see whether it was the duty of this fireman to blow at
this station or not.   And if somebody else was to dis-
charge this duty, this plaintiff would not be debarred of
his right to recover from the fact that some other em-
ployee on the road failed to discharge his duty, unless
he knew that he was acting recklessly and would lead
to trouble or had reason to believe so." The error
alleged as to this charge is: The declaration charged
all the negligence on employees of defendant other than
those in charge of the train on which plaintiff was
firing.   By a special plea defendant charged the injury
to have occurred by other and different causes, and in-
sisted in argument that no injury would have occurred
if the whistle on the approaching train had been blown
and that train checked up before reaching the public
crossing, and if that is so plaintiff could not recover on
the declaration, it matters not who on the moving train
was to blame, as there would be a variance between the
pleadings and the proof.   Also, that the charge was
error because it made defendant liable for negligence
other than that charged in the declaration, though such
other negligence caused the injury to plaintiff, and
further made defendant liable for this negligence unless
it was known to plaintiff.

The court charged, in connection with the foregoing:
"Now you can examine those facts, and if you also
believe, from the evidence in the case, that this train
was being run recklessly out of time, or anything of
that sort, you may look at the other side of the case
and see whether the plaintiff knew this was true or not;
whether he knew it was being run out of time; whether
it was being run recklessly; all that sort of thing.  If you
believe that to be true, you will look at the other side
and see whether he could have avoided the injury as he

was then situated, by the exercise of ordinary care. In other words, what he could have done to prevent himself, and under the circumstances if there was anything that a reasonable and prudent man could have done to have avoided the injury, then he ought to have done it. If you find that to be true, he cannot recover. If, on the other hand, you find that he exercised the discretion that a prudent man would have exercised under the circumstances, and this collision was brought about without any fault on his part, then, gentlemen of the jury, he is entitled to recover." It is alleged that this charge was erroneous, in that it made defendant liable for injury caused by negligence not charged in the declaration, and because it allowed plaintiff to recover if he acted prudently at the time of the injury, and confined the use of ordinary care by plaintiff to the immediate time of the injury, though plaintiff might have aided in bringing about the state of circumstances that occasioned the injury; and because it based plaintiff's right to recover on negligence other than that charged in the declaration and on his knowledge of such negligence.

The court charged: "In the event you find that plaintiff was without fault, that no fault of his contributed to this injury, either directly or indirectly, and you find the railroad company was negligent, the plaintiff ought to recover." It is alleged that this charge was error in that it made the company liable for any negligence, however small, and included that of the employees of the train on which plaintiff was firing; and because the charge made defendant liable for any negligence, while the law only makes it liable for the want of ordinary care.

After stating the acts of negligence charged in the declaration, the court charged: "You are to say, from all the evidence and circumstances that surround this case, whether the railroad company was negligent as

charged in the bill or not. If you find that they were not negligent and that they were not to blame for this accident, then the plaintiff ought not to recover. On the other hand, if they were negligent as charged in the bill or in some one of the ways which brought about this injury, and you further find that the plaintiff was not at fault, neither directly nor indirectly did contribute to this injury, then the plaintiff ought to recover." It is alleged this was error in that it made the defendant liable for the negligence of its employees in charge of the moving train or of any other person, which is not charged in the declaration.

At the request of the defendant the court charged: "An employee of a railroad company is not compelled to obey the orders of his superiors if such orders are rash and dangerous, and if, an employee is hurt or injured while in obedience to such orders he cannot recover." Then the court added this, which is complained of: "Now on that point, gentlemen of the jury, to explain that, if he was ordered by his engineer to fire up, if you should find that this engineer was running recklessly, or he was negligent, and if you find from the evidence that the fireman was ordered to fire up, if he knew or if the evidence shows that it was a dangerous order, then if the plaintiff knew that was a dangerous order he was not bound to obey it, but if he did obey it and in that way contributed to the injury, he cannot recover." This charge is alleged to be error, in that it placed the case before the jury in such light that if plaintiff did not know of the danger or did not contribute to it he could recover, which defendant insists is illegal and makes it liable for the negligence of plaintiff's own engineer, which is not charged in the declaration; and also, because the charge allowed plaintiff to recover if he did not know that the conduct of the engineer was reckless, although he might have believed or

had reason to believe that it was reckless, and confined this to the plaintiff in this particular case instead of applying this to what a prudent man would know or do under such circumstances.

Touching the last five grounds, the judge certified that he also charged thus: "In determining whether the plaintiff was without fault or not, you must take into consideration all of the evidence submitted in this case. In the first place you will look at all the evidence and see whether the plaintiff was a fireman on this train, and it is your province to consider, from all the facts in the case, as to what his duties were as fireman; and to consider that under all the circumstances, you may go back to their starting point on that trip, and take into consideration everything that occurred up to the time of this injury, in determining whether the plaintiff was at fault. After you have examined all the facts and circumstances that surround the case, if you find that he was at fault or that the plaintiff contributed to this injury, that is substantially, either directly or indirectly, or remotely, then, gentlemen of the jury, he could not recover." Also: "The jury in this case can consider all the surrounding facts and circumstances, the conduct of the plaintiff and his engineer on his engine during the day of the collision. If you should find that the engineer was reckless in any way in his conduct in running the engine and train during the day of the collision, and if you should find that such conduct contributed to the injury, and that the plaintiff aided and abetted the engineer in such conduct, plaintiff could not recover in this case. If, on the other hand, you find that he exercised that discretion that a prudent man would have exercised under the same circumstances, and this collision was brought about without any fault on his part, then, gentlemen of the jury, he is entitled to recover, unless the railroad company shows to you that

they themselves have exercised all ordinary care in order to avoid this injury. If you find from the evidence that they have exercised all ordinary and reasonable care to avoid the injury, or result or wreck that brought the injury, then if they show that, plaintiff cannot recover."

7. The court charged: "It is not for the court to intimate what has been proven and what has not been proven, and if I should inadvertently refer to what has been proven, you are not to consider it. It is for the jury, and the jury alone, to say what is in evidence and what is not in evidence, and if the court should inadvertently or unintentionally do so, you are not to consider it, because it is your province to say what has been proven and what has not been proven. Now bear that in mind." Movant insists that here a question of law was submitted to the jury, it being the duty of the court to decide what was in evidence, and of the jury to determine what such evidence proved.

8. The court charged, on the measure of damages, if the jury should find that the injury was permanent, as follows: "You will look to see what his expectancy is. I believe they claim in this case that it is thirty-five years, somewhere about that, but you will look and see what it is. Then you will see what his labor was worth to him per month or per annum, and when you find that you will then multiply what all the evidence —and you will consider it all—what his expectancy in life would be, if you find it to be twenty years, for instance, or twenty-five, or thirty or thirty-five years, whatever it is,—then you will multiply that by what you find he is worth per year; and in determining that, in arriving at what he would be worth, or could make, you are to consider the evidence in regard to his ability to work, his morals, his habits, and his expectancy in life; all those things are to be considered. You will also

take into consideration that old age will come on after a while. You will consider that perhaps in his after-life he will not be so able to work as when he is young, and will be worth less. And after you find all that, find his average value and his expectancy and multiply that. You will then find what its present cash value is, in the event you find that he is permanently injured and not able to work any more. When you find the true cash value on that point, that will be your verdict." It is alleged that this charge was erroneous, in that there was no evidence that plaintiff was permanently disabled from all kinds of work, and in that the jury was told to get from the evidence his average earnings and multiply that by his expectancy, and then instructed to get the present cash value, but no rule was given at all to arrive at the present cash value, the court failing to instruct the jury, as he should have done, that these earnings were in the nature of an annuity, would not be due except at the end of each year, and should be reduced so as to pay plaintiff now what these annual payments would be worth paid as they would accrue annually; that the charge was objectionable in including the morals of the plaintiff in estimating the amount to be found; and that the charge was confused and misleading, the leading idea being to multiply, which the verdict showed the jury strictly followed. As to this ground the judge certifies that, immediately preceding the language complained of, he charged : " He charges that by reason of this injury he is rendered helpless; in other words, he pleads and charges in this declaration that he is permanently injured to the extent that he will never be able to work, never have power to work and make money to the extent of more than one fourth of what he was originally worth. If the evidence discloses the fact that this plaintiff is permanently injured and it shows conclusively to you that he will

never be able to work and labor again, then you will look to the Carlisle tables submitted to you, and the other evidence in the case; these tables are not conclusive evidence." And immediately following the extract complained of the court charged: "But if you find that he is not permanently injured, but that he will recover and is able to work, now whatever the evidence shows, whatever this capacity to labor is diminished, if not entirely, if one half, or one fourth, or any other amount, you will find that much under the same rule. To illustrate what I mean without intimating any opinion, for I don't give any, but just illustrate what I mean: if he was worth a hundred dollars before the injury occurred and you find his capacity to labor has been diminished three fourths, then you will consider it worth twenty-five dollars, or one half fifty dollars, and so on. Whatever you find he is reduced in capacity by reason of this injury, if you find that he is entitled to recover, you will find for the plaintiff under the rules I have given you, reduced to a cash basis. You figure that out and say what it is." The judge certifies that this charge, both as to rule of law and the details and method of making the calculation, was given in exact conformity to the views of counsel for both sides as expressed in arguments to the court and explanations to the jury; and as to the charge on the "morals of the plaintiff," that during the examination of plaintiff on the trial, defendant's counsel claimed to have information that plaintiff was a fugitive from justice, and claimed to have the right to show what plaintiff had been doing, what his calling and occupation had been, how long he had stayed at different places and whether he was roving about or stationary. Defendant's counsel was allowed to make such inquiries, and other evidence was introduced upon the same subject.

9. The court charged: "In determining any material point in the case, it is the province of the jury to

take into consideration, in determining the weight and the value of the evidence, the manner of the witnesses on the stand, the character of each witness, if you know it, the interest or want of interest they take in the case, the opportunity of each witness to know the facts about which he testifies," etc. The objection to this charge is, that the court used the words " the character of each witness, if you know it," defendant insisting that the character of the witness is not in issue unless placed in issue by some evidence or by attack legally made thereon.

W. W. Brookes, J. D. Taylor, R. J. & J. McCamy and Hall & Hammond, for the railroad company.

W. M. Henry and Adamson & Jackson, *contra.*