## PETTYJOHN *v.* LIEBSCHER.

1. Where one who is really surety for another gives a promissory note in discharge of the obligation in its original form, and the obligation has already been discharged by the principal debtor, the surety being ignorant of the fact, the note so given by the latter is without consideration, whether the maker had or had not inquired of the principal debtor to ascertain whether the original debt still subsisted or had been paid.

2. A receipt on a promissory note in these words: " Paid by a sale of stock on this note, $2,666.00," signed by the holder of the note and attested by a witness, is not a bill of sale or written contract of sale.

3. Where property is turned over by a debtor to his creditor to be sold by the latter and the proceeds applied to the debt, the balance, if any, after satisfying the debt, to be returned to the debtor, the custodian of the property, if he faithfully executes the trust, is not chargeable with its value, but only with the proceeds realized from the sale, or which might have been realized by him in the exercise of proper diligence.  If he converts the property to his own use, he is chargeable with its actual value.

4. In a contest between two persons as to the value of certain property which one of them had held for the other in a fiduciary character, and for which the former was bound to account, what the property brought at a tax sale at which the person entrusted with it became the purchaser, is not admissible in his favor either to show independent title in himself, or to show the value of the property at the time he received it.  On the theory that the holding was not upon a trust or agency, but upon a contract of purchase made several months previously to the date of the tax sale, the same rule would prevail.

5. It was error, in charging upon the credibility of witnesses, to instruct the jury: "You may even consider their character for truth and veracity, if it be known to you."

June 5, 1893.

Complaint on notes.   Before Judge Eve.   City court of Richmond county.   May term, 1892.

William K. Miller, for plaintiff.
Marcellus P. Foster, for defendant.

Lumpkin, Justice.

1. Mrs. Liebscher contended that the note for $1,500 now in controversy, dated November 5, 1890, was given for the purpose of taking up two notes she had previously given as accommodation maker for Cartwright, one for $3,000, dated April 15, 1889, and the other for $1,514.67, dated September 10, 1889, the former being given only as a collateral upon which no value was realized, and the latter having been negotiated by Cartwright, who received the benefit of its proceeds. On the other hand, it was insisted that Mrs. Liebscher herself received the money on the note for $1,514.67. Even if she did, there can be no doubt that it was used for Cartwright's benefit, so that really her legal relation to him was that of surety only. Her defence to the note upon which she was sued was, that prior to the making of the same, but without her knowledge, Cartwright had fully settled the previous indebtedness for which she was liable as stated, and that therefore the note sued on was entirely without consideration. Counsel for the plaintiff complained of the refusal of the court to allow Mrs. Liebscher, when on the stand as a witness, to be asked whether or not she had inquired of Cartwright, before she gave the note sued on, if he had in fact paid off the original note for $1,514.67 given by himself and her to the plaintiff. Exception was also taken to a charge of the court, to the effect that if Cartwright had settled his indebtedness to Mrs. Pettyjohn, and Mrs. Liebscher, in ignorance of this fact, gave the note in controversy in settlement of this same indebtedness, she would not be liable. There was no error in

rejecting the evidence mentioned, or in making the charge complained of. If the facts were as Mrs. Liebscher contended, no one was injured by her failure to ascertain whether the original debt still subsisted or had been paid. If Mrs. Liebscher simply intended to give a new note for an indebtedness of Cartwright upon which she was originally bound, and this was understood by Mrs. Pettyjohn's agent, and if this indebtedness had in fact been already settled by Cartwright, there was certainly no consideration for the new note. If Cartwright had not settled the old debt in full, the new note would, under the circumstances, be binding upon Mrs. Liebscher to no greater extent than any unpaid balance on the original debt. We are unable to perceive what difference it would make to Mrs. Pettyjohn whether Mrs. Liebscher had or had not exercised the proper diligence in ascertaining the facts before giving the new note. If the old note was really settled, surrendering it involved no loss to Mrs. Pettyjohn, nor does it appear that the failure of Mrs. Liebscher to make of Cartwright the inquiry in question resulted in any injury whatever to Mrs. Pettyjohn. It is clear that this claim against Cartwright would be paid twice if the facts were as claimed by Mrs. Liebscher, and if the latter should now be held liable upon the note in controversy. If the note sued on was given for another and altogether different consideration than that contended for by Mrs. Liebscher, the evidence referred to would simply be irrelevant and immaterial, and should not have been admitted. In view of Mrs. Liebscher's contention, the charge complained of was certainly proper. We do not, of course, mean to intimate or express any opinion as to the correctness of this contention by her, for the case is to be tried again, and the proper determination of it depends largely upon what the real truth is as to whether or not the indebtedness

of Cartwright to Mrs. Pettyjohn on the $1,514.67 note had been discharged when Mrs. Liebscher gave the note sued on. The evidence upon this issue was decidedly conflicting, and at the next hearing the case should be made to turn upon the proper determination of this question by the jury.

2. Cartwright testified that, being indebted to Pettyjohn upon a note for $5,500, secured by a mortgage, and being financially embarrassed and about to fail, he went through the form of a sale to Pettyjohn, by the terms of which the bar-fixtures, a stock of liquors, and other property, were turned over to Pettyjohn with the understanding that after paying himself, he was to hold the balance of the property for Cartwright. It appeared from other evidence introduced that Pettyjohn was acting as agent for his wife, and that the indebtedness mentioned was really due to her. Objection was made to the foregoing testimony of Cartwright, upon the ground that the admission of it would be in violation of the rule of law which forbids the contradiction of a written contract by parol testimony. The only writing relating to this transaction was an entry on the back of the $5,500 note in the following words: "1889, August 22. Paid by sale of stock on this note, $2,666. [Signed] L. B. Pettyjohn." This was no contract at all. It was simply a receipt, or credit, for a payment on a note. But considering it as a contract, it was not signed by Cartwright, and there is no rule of law of which we are aware which would prevent his explaining by parol the meaning and purpose of the entry.

3. If the testimony of Cartwright, which we have just ruled was properly admitted, be taken as true, Pettyjohn could have realized from the property turned over to him by Cartwright in only one of the two ways: either selling the property and applying the proceeds to the payment of the debt due by Cartwright to Mrs. Petty-

john, or by appropriating and applying the property itself to her use. In so far as he adopted the first course indicated, it was his duty to obtain the best prices possible in the honest, faithful and diligent execution of the trust reposed in him. If he did this, he would be bound to account only for the actual proceeds of the sale, and would not be chargeable, under these circumstances, with the actual value of the property. In so far as he may have appropriated the property, and thus converted it to the use of his wife as owner, he would be chargeable with its actual value. A creditor who receives property from his debtor in satisfaction of a debt, in the absence of any stipulation as to price, must take the property for what it is fairly worth in the market.

4. Pettyjohn testified that the stock of liquors was actually accepted, at $2,666.40, " as so much payment on account, and that the credit of this amount on the $5,500.00 note was made in the presence of Cartwright, who fully agreed thereto, on August 22, 1889. He further testified : " From that day on, I ran the bar. I soon got tired of it, and told Mr. Cartwright, who was still there, that I did not want to make any money out of him, and that all I wanted was that he should pay me what he owed my wife, and if he could take the property and work her debt out of it, which he said he could, I was willing he should have all that was left." According to Pettyjohn's testimony, after the date last mentioned, Cartwright and his brother conducted the barroom business for a considerable time under the direction and supervision of Pettyjohn, who claims to have bought all that was needed to carry on the business, paid taxes, license fees, rent, and other expenses, up to the 6th of November, 1890. The plaintiff offered to prove that the property was thereafter sold under a tax execution, and bought by herself for $1,315.75, the object

of the testimony being to show that she had an independent title to the property not derived from Cartwright, and also to show the value of the property at the time her agent received it.   If Mrs. Pettyjohn's agent had possession of the property under circumstances which also made him a trustee for Cartwright, and the property was sold for taxes, Pettyjohn could not become the purchaser at the tax sale, either for the benefit of himself or of his wife; and what the property brought at such sale would not be evidence, as against Cartwright, of its real value when turned over to Pettyjohn several months before the date of the tax sale.   On the theory that Pettyjohn was not, as to Cartwright, holding the property in the relation of trustee or agent, but upon a contract of actual purchase made some time before the tax sale, the same rule would apply.

5. The rule announced in the fifth head-note is supported by *Chat., Rome & Columbus R. R. Co.* v. *Owen,* 90 *Ga.* 265, 15 S. E. Rep. 853.   See authorities therein cited.                                     *Judgment reversed.*