### 3161.   BAUMGARTNER *v.* McKINNON, administrator.

1. "The appointment of a temporary administrator does not constitute 'representation' upon the estate of a decedent, within the purview of the Civil Code (1910), § 4376, which provides that 'the time between the death of a person and representation taken upon his estate . . shall not be counted against his estate, provided such time does not exceed five years,' so as to cause the statute of limitations to begin to run against the estate upon the appointment of such temporary administrator."  *Baumgartner* v. *McKinnon,* 137 *Ga.* 165 (73 S. E. 518).

2. "As a general rule, the debtor has a right to appropriate payments; if he does not, the creditor may.   If neither does, the jury will make the application under the direction of the court."  *Newton* v. *Nunnally,* 4 *Ga.* 357; Civil Code (1910), § 4316.   A surety can not claim a release from liability to pay a promissory note which he indorsed, upon the ground that the payee, who was also the payee of notes junior in date

and maturity, executed by the same maker, failed to apply payments made by the principal debtor (without direction as to their application) to the oldest note. All of the obligations of the principal debtor being ordinary promissory notes indorsed by different parties, and none of them creating any lien, there was nothing to affect the creditor's statutory right under the foregoing section of the code.

DECIDED JANUARY 15, 1912.

Complaint; from city court of Brunswick—Judge Krauss. October 29, 1910.

It appears from the record that P. W. Fleming borrowed $500 from John A. Ward, and gave therefor a promissory note, dated February 6, 1903, and due one year after date, with interest from date at the rate of eight per cent. per annum. The note was indorsed by B. A. White Jr., M. Elkan, and Fred Baumgartner. On May 1, 1903, Fleming borrowed $200 from Ward on his (Fleming's) note indorsed by George R. Krauss, and $300 on his (Fleming's) note indorsed by R. R. Hopkins and C. D. Ogg. Both of these latter notes fell due May 1, 1904. Thus Fleming owed Ward $1,000 in all (exclusive of interest), payable in three notes, each indorsed by different parties. So far as appears, Fleming paid Ward nothing until March 2, 1906, when a payment of $80 was made, and this was followed by various other payments, up to the death of the creditor, aggregating $736.60, and one payment of $5 credited upon the note after the death of the intestate. Of these payments $217.50 only was applied toward the satisfaction of the note indorsed by White, Elkan, and Baumgartner, and on April 12, 1910, suit was instituted for the remainder of the debt evidenced by this note. Neither Fleming nor White filed a defense. Elkan was not served, and Baumgartner alone set up a defense.

Baumgartner pleaded that he was only an accommodation indorser, or guarantor, on the note, and had heard nothing about it from the time he indorsed it (February 6, 1903) up to the time he was served with copy of the suit, and he naturally supposed it had long since been paid. He further alleged that, Fleming having borrowed the $500 on the two notes as stated above, and having paid Ward in all $741.60 on his general indebtedness, it was the duty of Ward to apply all of the payments to the note indorsed by himself, it being the oldest item in Fleming's indebtedness; that the note would thereupon have been paid; whereas, as he alleged, Ward credited the note indorsed by Hopkins and Ogg with $334.50, and the note indorsed by Krauss with $189.60, and only credited the

note indorsed by the defendant with $217.50; that this act of the creditor injured him, Baumgartner, as a security on the note, and increased his risk thereon, and exposed him to greater liability, and he was thereby discharged. The court struck this portion of the plea, and exception is taken to this ruling.

It was further pleaded that the note was barred by the statute of limitations, for the reason that when the suit was filed, more than six years had elapsed since the maturity of the note; that on April 23, 1909, a temporary administrator was appointed, with authority to bring suit upon the note, and his failure to bring suit caused the bar of the statute to attach. According to the evidence, the plaintiff's intestate died April 16, 1909, and no permanent letters of administration were granted until July 7, 1909, but temporary letters of administration were granted on April 23, 1909.

The court (trying the case without a jury) found against the plea of the bar of the statute of limitations, and rendered judgment against the defendant surety along with the other defendants. He excepted to this judgment.

*R. D. Meader*, for plaintiff in error.

*H. F. Dunwody*, contra.

RUSSELL, J. (After stating the foregoing facts.)

Inasmuch as a finding in favor of the defendant upon the plea of the statute of limitations would have worked a total disposition of the case, regardless of the ruling upon the plea of release, and in view of the fact that this court requested the instruction of the Supreme Court upon that branch of the case, we shall consider in inverse order the defenses presented by the pleas. The decision of the Supreme Court, in answer to the certified question, disposes of the plea of the statute of limitations, and sustains the final judgment of the trial judge, unless the judge erroneously struck that portion of the plea wherein the defendant attempted to set up his release as surety; and it is only upon this phase of the case that this court will be called to pass.

1. The question certified to the Supreme Court was as follows: "Does the appointment of a temporary administrator constitute ' representation ' upon the estate of the decedent, within the purview of Civil Code (1910), § 4376, which provides that ' the time between the death of a person and representation taken upon his estate . . shall not be counted against his estate,' for the pur-

poses of the statute of limitation of actions? In this connection counsel for plaintiff in error has requested the right to review the decision of the Supreme Court in the case of *Scott* v. *Atwell, 63 Ga.* 764, for the purpose of having the same modified or overruled." And the instruction is contained in the following opinion, delivered by Justice Lumpkin:

"It is true that the code declares that a temporary administrator may sue to recover debts due the estate (Civil Code (1910), § 3937) ; and upon the general analogy of the law that where a person has the capacity to sue, and fails to exercise the right, the statute of limitations will run against him, an argument may be based that, on account of the provision of this section, the right and duty are correlative, and the statute runs against the estate. But, on the other hand, the section of the code to which reference has been made arose, not from legislative enactment, but from the codification of the decision in *Ewing* v. *Moses, 50 Ga.* 264. The decision in that case was rendered before the one in *Scott* v. *Atwell, 63 Ga.* 764. The opinion in the case last cited expressly referred to the fact that the court had held that temporary administrators had the right to sue in certain cases, but nevertheless construed the statute suspending the running of the statute of limitations against an estate until ' representation taken,' provided the time elapsing was not greater than five years, to refer to the grant of permanent letters. The members of the court doubtless had before them the decision in the 50 *Ga.*, supra, as well as other cases, at the time this construction was placed upon the statute; and we do not think that the codification of the decision in the 50 *Ga.*, and the adoption of the code containing that provision, is sufficient to change the ruling thus made.

"A temporary administrator occupies a somewhat peculiar position. He is appointed to act only until a permanent administrator is appointed, for the purpose of collecting and taking care of the effects of the deceased ; and from the order appointing him no appeal is allowed. Civil Code (1910), § 3935. By the Civil Code (1910), § 3936, he is required to give a bond for double the amount of the personal property ; but it has been held that no action can be brought on the bond until the appointment of a permanent administrator. *Webster* v. *Thompson, 55 Ga.* 431. His duties are principally of preservative character. *Banks* v. *Walker, 112 Ga.*

542; *Neal* v. *Boykin,* 129 *Ga.* 676, 682 (59 S. E. 912, 121 Am. St. R. 237). A permanent administrator is required to give bond in a sum equal to double the amount of the estate to be administered. Civil Code (1910), § 3972. A temporary administrator may take steps with a view of collecting and preserving the estate, including certain litigation; but he is not clothed with the full power of a permanent administrator. Thus, he can not sue for the recovery of land. *Banks* v. *Walker,* supra. He can not distribute the estate; nor will notice to him of an application for dower be sufficient. *Langford* v. *Langford,* 82 *Ga.* 202 (8 S. E. 76). Section 3997 of Code of 1910 declares that an administrator shall be allowed twelve months from the date of his qualification to ascertain the condition of the estate and that creditors failing to give notice within that time lose all rights to an equal participation with creditors of equal dignity to whom distribution is made before notice of such claim is brought to the administrator. Evidently this did not contemplate a temporary administrator, who has no right to make any distribution. The language of the Civil Code (1910), § 4377, touching the suspension of the statute in favor of an estate, is the same as that relating to the running of the statute against it. If the estate could practically be wound up by litigation pro and con with a temporary administrator, and the statute of limitations be applied to such administrator as well as to a permanent one, section 3997 would be of little avail to the estate. Moreover, a judgment against an administrator is conclusive evidence that he has in his hands assets of the decedent, if he fails to plead plene administravit or plene administravit præter. Neither of these pleas could be filed by a temporary administrator. It will thus be seen, that, comparing the functions of a temporary administrator with those of a permanent administrator under the statutes of this State and the decisions construing them, it would produce much confusion and conflict to hold that the estate should be barred by the omission of the temporary administrator to sue.

"The ruling announced in the first headnote follows the decision in *Scott* v. *Atwell,* 63 *Ga.* 764; and that decision answers the question propounded by the Court of Appeals, unless, upon review, it is overruled or modified by this court. Upon request of counsel, the Court of Appeals has certified the question to this court, so that application may be made for such a review. The decision mentioned

was rendered in 1879, and has stood unquestioned from that time until the present. Upon a review of it, we decline to modify or over-rule it."

2.   As to whether the action of Ward, in failing to credit all of the payments made upon the general indebtedness due him by Flem-ing and evidenced by the three notes to which we have referred (in the absence of any direction upon Fleming's part as to the ap-plication of the payments), effected a release of Baumgartner as a surety, it is contended by learned counsel for the plaintiff in error that though, ordinarily, a creditor, in the absence of instruction or direction from the debtor, has the right to apply payments made to him, as he may see fit, to any one or more of different obligations due him by the same debtor, still this rule is varied where the rights of others are affected, and the creditor in this case should have applied a larger proportion of the payments made by Fleming, if not all, to the note indorsed by Baumgartner.   The cases of *Cofer* v. *Benson,* 92 *Ga.* 794, *Newton* v. *Nunnally,* 4 *Ga.* 356, *Rushin* v. *Shields,* 11 *Ga.* 636 (56 Am. Dec. 436), *Simmons* v. *Cates,* 56 *Ga.* 609, Hughes *v.* Johnson, 38 Ark. 285, and Jones on Chattel Mort-gages, § 640, are cited in support of the principle that the rights of third persons must be considered by a creditor in making appli-cation of payments made by his debtor.   It is further insisted that the intention of the parties, in making the payments, is a question for a jury to pass upon, and that in rendering his judgment the court did not give effect to this circumstance, as required by the ruling in *Pritchard* v. *Comer,* 71 *Ga.* 18.   In the case last cited it was held, that when the debtor fails to make a direction as to how payments shall be applied, and the creditor applies the pay-ments to suit himself, the question of intention in making the pay-ments should be submitted to the jury; but in that case there were circumstances developed from the very nature of the transaction it-self which evidenced the intention of the parties, and which the Supreme Court held was "equivalent to a direction of the appli-cation of the money."   Justice Blandford, in making this ruling, said:   "To hold otherwise would operate as a fraud upon  .   . the indorser, as he made this indorsement with full knowledge that his principal had made the mortgage to secure the payment of the fifteen hundred dollar note upon which he gave his indorsement." In the case now before us there is no evidence of any kind to indi-

cate an intention on the part of Fleming, who made the payments, that these payments should be applied to any one of the notes in preference to the other; and so the point seems to be without merit. We do not think there is anything in the allegations of the plea which would take the case out of the general rule which gives a creditor the right to apply payments as he sees fit, in the absence of a direction on the part of the debtor as to how the payments should be applied. Certainly no reason is found in the statement that the other notes held by Ward were junior in date to the one which Baumgartner indorsed, nor in the fact that the amount of both of these later notes only equaled the first one. Even if Ward had applied to the junior notes all of the payments made by Fleming, this would not have been such an act, within the contemplation of the law, as injured the surety, Baumgartner, or increased his risk, or exposed him to greater liability, so as to discharge him.

Section 4316 of the Civil Code (1910), relating to the application of payments, is as follows: "When a payment is made by a debtor to a creditor holding several demands against him, the debtor has a right to direct the claim to which it shall be appropriated. If he fails to do so, the creditor has the right to appropriate at his election. If neither exercises this privilege, the law will direct the application in such manner as is reasonable and equitable, both as to parties and third persons. As a general rule, the oldest lien and the oldest item in an account will be first paid, the presumption of law being that such would be the fair intention of the parties." As we construe this section, its latter portion imposes no limitation on the right of either of the parties, as previously stated, if either has exercised the option conferred by law, the debtor having first the privilege of directing the application of the payment he makes; for the direction by law occurs only "if neither exercises this privilege." Of course, where a fund is brought before the court for distribution according to law, and it is discovered that by reason of a legal priority the rights of a third person are involved and are superior to those of the creditor who has received a payment, the previous disposition of that fund, whether it has been applied upon the creditor's demand at the instance of the debtor, or, in the absence of such direction, by the creditor himself, becomes immaterial, and the provisions of § 4316 have no application to the case. As was said by Judge Lumpkin in *Newton* v. *Nunnally,* 4 *Ga.* 357:

"As a general rule, the debtor has a right to appropriate payments; if he does not, the creditor may. If neither does, the jury will make the application under the direction of the court." And as that was a case in which priority of liens was involved, Judge Lumpkin quoted from Chief Justice Marshall in Rankin *v.* Scott, 12 Wheaton, 177 (6 L. ed. 592): "The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to satisfaction."

In all of the cases cited by counsel for the plaintiff in error it appears that there was outstanding some superior lien, in the hands of some third party, which was entitled to a priority over the indebtedness to which it was sought to apply the payment in question; and as the answer of the defendant, which was stricken, distinctly states that "in making said payments to said Ward said Fleming paid them on his general indebtedness, which consisted of said three notes aforesaid, and did not advise or request that same be applied to any particular note," it is manifest that these decisions have no bearing, but that the case is rather controlled by the provisions of § 4316 of the Civil Code. The note that Baumgartner indorsed had no superior right to the money paid by Fleming which would, under the law, have required its application to that note rather than to the other two notes, which Baumgartner had not indorsed. When Fleming did not direct the application of the payments, Ward had the right to apply them as he pleased.

So much of the defendant's plea as attempts to set up the defense that the plaintiff was guilty of laches, in that he did not bring suit earlier, and thereby increased the risk of the surety, was properly stricken, because there was no allegation that there was a consideration for the postponement, nor an averment that the security had given a written notice to sue. Under the ruling in *Thomas* v. *Clarkson,* 125 *Ga.* 78, 79 (3), (54 S. E. 77, 81, 6 L. R. A. [N. S.] 658): "the surety could not, at common law, be discharged by failure of the payee to sue, and the plea setting up such defense was necessarily without merit." "A mere failure by the creditor to sue as soon as the law allows, or negligence to prosecute with vigor his legal remedies, unless for a consideration, will not release the surety." Civil Code (1910), § 3544.

There was plainly no merit in the stricken defenses; and the answer of the Supreme Court to the certified question, and its affirm-

ance, upon review, of the decision in *Scott* v. *Atwell*, 63 *Ga.* 764, sustains the judgment of the lower court.

*Judgment affirmed.*