### 23105.   LOFLIN *v.* HOWARD.

DECIDED JANUARY 31, 1934.

*J. B. & T. R. Burnside; W. A. Slaton,* for plaintiff in error.
*Earle Norman,* contra.

JENKINS, P. J.   In an action on a renewal promissory note, the plaintiff receiver of the payee bank recovered $5381.07 principal, $944.99 interest, and $632.55 attorney's fees.   The defendant pleaded that he had transferred and delivered to the bank as collateral for his original indebtedness a contract made by him with a lumber company, and $7500 of promissory notes, under which the company was to cut 1,500,000 feet of timber on his land, but was not to remove the same until payments on the notes amounted to at least $1000 more than the actual value of timber cut; that the company paid to the bank on its notes $3000 after October 1, 1926, and $1000 in the spring of 1927, but hauled away lumber in violation of the contract; that the defendant twice notified the bank of this removal, and demanded that it take necessary steps to protect itself and the defendant, when there still remained on his land sufficient lumber to pay all of his indebtedness to the bank, but that the bank exercised no diligence whatever in trying to protect the security from loss, permitted the removal of the lumber, and failed to make any effort to collect the collateral notes; "which damaged defendant in the full amount of the indebtedness" which he owed the bank, and "fully discharged him from any liability on his said obligation."   The 13th paragraph of the answer "charges upon information and belief that the proceeds of the sale of all of said lumber went into said [bank] and were applied by it fraudulently as a credit on certain indebtedness which was due it by said [lumber company];" "that a sufficiency of the proceeds of the sale of said lumber was so fraudulently applied to [the last-stated indebtedness] to have fully paid the entire indebtedness of defendant to said bank, had it been applied to defendant's said indebtedness as it should have been applied, and as defendant prays that it be now applied as a matter of right."   The 14th paragraph alleges that, "while the note sued on is dated the 18th day of August, 1930, yet the same is a renewal note representing the alleged indebtedness of defendant to· [said bank] hereinbefore referred to, yet *at the time that said renewal note was given,* defendant alleges that, *on account of the above stated facts* [italics ours], there was no consideration for said renewal note sued on, and that the consideration for said note has wholly, utterly, and entirely failed, and this defendant pleads

total failure of consideration against said note." The bank demurred to the answer as a whole and to separate paragraphs, upon the grounds that they showed no defense, and that the defendant had waived his defenses of fraud and failure of consideration because he had full knowledge of the matters alleged at the time he signed the renewal note sued upon. The only special ground of demurrer attacking the form of the answer is to paragraph 14, and is that "the facts therein set forth embody a mere conclusion of the pleader, unsupported by allegations of fact in this paragraph of the plea and answer or elsewhere therein." The court sustained the general grounds of the demurrer, struck the plea, and permitted a verdict for the bank as in a case of default. No ruling was made on the special demurrer.

1. The execution of a renewal note, without express or implied reservation, waives "the defenses of fraud and failure of consideration, the same being known to the defendant at the time." *Carl S. Strickland Co.* v. *Union Banking Co.*, 42 *Ga. App.* 645 (6) (157 S. E. 115). See also *Pettyjohn* v. *Liebscher,* 92 *Ga.* 149, 150 (17 S. E. 1007). But there is no such waiver or estoppel when the facts upon which these defenses are based are not ascertained until after the renewal note is executed.

2. "The pawnee is bound for ordinary care and diligence. If the property pledged be promissory notes or other evidences of debt, the pawnee must exercise ordinary diligence in collecting and securing the same." Civil Code (1910), § 3535; *Citizens Bank of Madison* v. *Shaw,* 132 *Ga.* 771 (2) (65 S. E. 81). "The holder of such notes stands in the relation of a trustee for the benefit of the principal debtor; and for any loss which the pledgor suffers as a direct and proximate result of the failure of the pledgee to exercise ordinary diligence in making the collection of the collateral security notes, the pledgor is entitled to recover." *Kelley* v. *Farmers Bank, 6 Ga. App.* 691, 693 (65 S. E. 706). "For the purposes of the pledge, the pledgee holds the pledged property *in trust first for himself to the extent of his claim and then for the pledgor;* and the same rules apply whether the collateral pledged is the obligation of a third person or of the debtor himself." (Italics ours.) 49 C. J. 921, 1021, 1022 (§§ 52, 296, 298).

3. "When a payment is made by a debtor to a creditor holding several demands against him, the debtor has the right to direct the

claim to which it shall be appropriated. If he fails to do so, the creditor has the right to appropriate at his election. If neither exercises this privilege, the law will direct the application in such manner as is reasonable and equitable, both as to parties and third persons. As a general rule, the oldest lien and the oldest item in an account will be first paid, the presumption of law being that such would be the fair intention of the parties." Civil Code, § 4316. But these statutory rules have no application as against a third person holding a prior lien, priority, or claim against the proceeds of the payment, superior to the rights of the creditor and the debtor, in which event, in a controversy between such third person and the creditor wherein the prior rights of the third person are shown, it is immaterial whether the creditor applied the payment upon a demand of his own by the debtor's direction or at his own instance. See *Baumgartner* v. *McKinnon,* 10 *Ga. App.* 219 (2), 225 (73 S. E. 519). Accordingly, under the trust obligations of a pledgee to the pledgor, where the payee of a promissory note holds by assignment a contract for the purchase-price of timber with a lien, preventing the removal from the land of the cut timber until paid for, and promissory notes for the purchase-price, which contract and notes were transferred to the pledgee as collateral security for the payment of the pledgor's note, and where the pledgee collects from the maker of the pledged notes moneys derived from the sale of the cut timber, it can not, without the express or implied consent of the pledgor, legally apply such proceeds upon a debt of its own due to it by the maker of the pledged notes, but must first credit such collections upon the obligation of the pledgor, and where it has failed to do so, the pledgor, in a suit by the pledgee against him upon his obligation, is entitled to claim such credit. See *Bank of LaGrange* v. *Cotter,* 101 *Ga.* 134, 136 (28 S. E. 644) ; *Parks* v. *Savannah Bank & Trust Co.,* 34 *Ga. App.* 554 (130 S. E. 365).

4. A defense good in part should not be stricken in its entirety as against general demurrer. *Tietjen* v. *Meldrim,* 169 *Ga.* 678 (151 S. E. 341) ; *Blaylock* v. *Hackel,* 164 *Ga.* 257 (5) (138 S. E. 333).

5. The portion of the answer contained in paragraph 13 and other paragraphs, setting up a misapplication of collections by the plaintiff bank upon the pledged collateral notes, as indicated above, was good as against general demurrer. It does not appear that the

defendant pledgee had knowledge of such alleged collections and application of moneys at the time he executed to the pledgee the renewal note sued upon. Other defenses claimed were, however, subject to the general demurrer, since it plainly appears that at the time the renewal note was made, the defendant necessarily must have known of the bank's alleged want of diligence in failing to take steps to prevent the removal of the cut timber and in failing to proceed upon the pledged collateral, since he himself charges that he unsuccessfully gave them two notices to do so.

(a) Although paragraph 13 of the answer alleges that the collections by the pledgee bank were sufficient to have "fully paid the entire indebtedness of defendant to said bank," other averments show that $4000 had been previously paid on the collateral notes, which should be deducted from the original $7500 principal indebtedness, leaving only the balance due plus proper interest adjustments, as the maximum which the defendant would be entitled to claim from the collections as a credit upon his note for $5381.07 principal, $944.49 interest to February 6, 1933, and attorney's fee.

(b) There is no special demurrer attacking the form of the allegations of paragraph 13 relating to misapplication of collections. It is charged "upon information and belief" that these were applied "fraudulently as a credit" upon the plaintiff's own obligations instead of upon the collateral. There is no special attack upon the quoted language, which, taken with other averments of fact, sufficed as against the general demurrer. See as to allegations upon information and belief, especially where the facts lie more or equally within the knowledge of the opposite party. *Reeves* v. *Jackson*, 158 *Ga.* 676 (4) (124 S. E. 135); *Girvin* v. *Georgia Veneer Co.*, 143 *Ga.* 762 (4) (85 S. E. 922); *Thompson* v. *Bank of Chatsworth*, 30 *Ga. App.* 443 (9) (118 S. E. 470); 49 C. J. 38 (§ 14).

6. Even if, as contended by special demurrer, the answer failed to set forth with particularity the times, places, amounts, or circumstances of the alleged collections by the plaintiff bank, for which the defendant claims credit, and failed to set forth the facts of the alleged want or failure of consideration in the renewal note sued upon, otherwise than as indicated in the preceding divisions of the syllabus, any such defect would not render the answer subject to the general demurrer. The special demurrer raising these questions, not having been passed upon by the court, is not dealt with

here. The striking of the entire answer on general demurrer was erroneous, rendering the subsequent proceedings nugatory, and for this reason the judgment must be reversed.

*Judgment reversed. Stephens and Sutton, JJ., concur.*