No. 73.—WILLIAM RUSHIN, plaintiff in error, *vs.* SHIELDS & BALL, defendants in error.

[1.] Where a deed is recorded, which is not required by law to be recorded, a certified copy from the records would not be evidence.

[2.] If a deed is improperly admitted to record, the proof of its execution being insufficient, the record copy of said deed cannot be legally read in evidence.

[3.] The irregular registration of a deed, is not even notice.

[4.] The omission to state in the *probate* of a deed, that it was *delivered,* is not essential.

[5.] If a deed be signed and sealed, and declared by the grantor in the presence of the attesting witnesses, to be delivered as his deed; it is an effectual delivery, provided there be nothing to qualify the delivery, notwithstanding the grantee was not present, nor any person in his behalf, and the deed remained under the control of the grantor.

[6.] The delivery of a deed may be inferred from its possession by the grantee, or from his possession of the land under the deed.

[7.] Where an original execution has been lost or destroyed, a copy should be established, and not an *alias fi. fa.* issued.

[8.] An *alias fi. fa.* can only, under the laws of this State, issue upon the revival of a dormant judgment.

[9.] If an execution creditor, having the *older* lien upon the fund in the Sheriff's hands, allows it by his *consent* and *direction*, to be applied to a *younger fi. fa.* to the prejudice of *third persons,* it will be considered an extinguishment *pro tanto* of the creditor's lien; and it matters not, under which execution the money was raised and brought into Court.

[10.] It is error in the presiding Judge, to state to the Jury, what has or has not been proved.

Claim, in Stewart Superior Court.   Tried before Judge Iverson, April Term, 1852.

A *fi. fa.* in favor of Shields & Ball *vs.* G. H. Croxton, was levied on a tract of land in Stewart County, to which William Rushin interposed a claim.   Upon the trial, the plaintiffs in *fi. fa.* offered in evidence, a copy deed from John Stanton to James Moore; to which plaintiff's counsel objected, on the ground that the probate thereof was not sufficient to authorize its registry; the subscribing witness swearing, " that he saw John Stanton sign and seal the deed, and for the purposes therein named; and that he also saw Duke Hamilton and W. A. Mott, as witnesses to the same."   The Court admitted the deed, and this is the first error assigned.

Plaintiff in *fi. fa.* then proposed to read in evidence a copy of a deed from M L. Brown to G. H. Croxton, to which claimant's counsel objected, on the ground that the probate thereof, was insufficient to authorize its registry, the subscribing witness swearing, " that he saw M. L. Brown assign the within deed, and that E. D. H. assigned with him at the same time, as a subscribing witness."   The Court admitted the deed, and this is assigned as error.

Plaintiff in *fi. fa.* then proposed to read in evidence an *alias fi. fa.* (under which the levy had been made,) issued by F. D. Wimberly, Clerk of the Inferior Court of said County, on the

— day of July, 1846, in lieu of an original, alleged to have been lost; also, an order passed by the said Inferior Court, at its July Term, 1846, requiring the Clerk to issue an *alias fi. fa.*,

Counsel for claimant objected to this *alias fi. fa.* on the ground that a copy of the lost original should have been established, as provided by the Statute; and that the Inferior Court had no authority to order an *alias fi. fa.* issued. The Court overruled the objection, and this decision is assigned as error.

The claimant proved by one Daniel Matheson, that he, as Sheriff, in 1842, raised a large sum of money from the property of Croxton, under a certain *fi. fa.* against him, and that the owner and assignee of the *fi. fa.* now levied, notified him, as Sheriff, to hold up the money so raised, as he claimed it, under this *fi. fa.;* that he did so hold it up, and afterwards, by the instructions of the assignee, paid out the fund, ($80 or $100) to others. The Court, in its instructions to the Jury, charged them, " that forasmuch as the *fi. fa.* in favor of Shields & Ball was not levied, and did not raise and bring this fund into Court, but the same was raised under a junior *fi. fa.,* the payment of the money by Matheson, under the instructions of the assignee of this *fi. fa.* did not amount to a payment or satisfaction *pro tanto,* of this *fi. fa.* To which charge counsel for claimant excepted, and has assigned the same as error.

Some time after the Jury returned, one of them came into Court with the Bailiff, and stated to the Court, that he and his fellow Jurors disagreed as to whether the Shields & Ball *fi. fa.* had been levied at the time the money was raised, about which Matheson testified. Whereupon, the Judge told the Juror, that there was no evidence introduced, going to show that the execution of Shields & Ball had been levied, and brought the said fund into Court. To which proceeding by the Court, claimant by his counsel excepted, and has assigned error thereon.

B. H. WORRILL, for plaintiff in error.

JOHN A. TUCKER and HARRISON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] William Shields and John F. Ball, comprising the firm of Shields & Ball, holding an execution against Gideon H. Croxton, caused the same to be levied on the south half of lot No. 7, in the first section and 33d district of what was originally Lee County, containing $202\frac{1}{2}$ acres. The land was claimed by William Rushin. Plaintiffs in *fi. fa.* read in evidence on the trial, a duplicate plot and grant, from the State of Georgia, to one John Stanton, for the premises. They then offered and proposed to read a copy deed from John Stanton to James Moore, to the lot of land. Claimant objected to the testimony, on the ground that the probate was defective in this that, Henry B. Meshom, the subscribing witness, upon whose affidavit alone, the deed was admitted to record, did not testify to the *execution* of the instrument. He swore merely, that he saw John Stanton, the feoffer, *sign* and *seal* the conveyance, for the purposes therein named; and that he saw likewise, Duke Hamilton and William A. Mott, the other attesting witnesses, subscribe their names as such. He does not depose to the *delivery* of the deed. The Court overruled the objection, and permitted the paper to be read to the Jury. And this constitutes the first assignment of error.

There can be no doubt, we apprehend, that where a deed is recorded, which is not required by law to be recorded, a certified copy from the records, would not be evidence under the Statute making certified copies from the record of deeds evidence.

[2.] The same result would follow, where the instrument was required by law to be recorded, but the record was actually made without authority. As for instance, by the laws of this State, a deed executed in the presence of, and attested by a Notary Public, Judge of the Superior Court, Justice of the Inferior Court, or of the Peace, and by one other witness, is authorized to be admitted to record. But suppose the registration was made upon the attestation alone of the Magistrate, would it be pretended that a certified copy of such a deed, the original being

lost, could be read in evidence in the Courts of this State? Most assuredly not.

[3.] Indeed, we hold the general principle to have gone to the entire extent, although there may be some respectable authority the other way, that an irregular registration of a deed, is not even notice. *Heister vs. Fortner,* 2 *Binney,* 44. *Hotson vs. Britts,* 3 *Cranch,* 140. *DeWitt vs. Moulton,* 5 *Shep.* 418. *Giddings vs. Smith,* 15 *Verm.* 344. 1 *Watts,* 322. *Tid.* 31. 2 *Conn.* 527. 3 *Day,* 508. 2 *Mason,* 117. 10 *Pick.* 172.

[4.] But the precise question here is, whether the omission to state in the probate of a deed, that it was *delivered,* or words tantamount to that, is essential; it having been, in fact, delivered and registered. We are inclined to think, not without some misgivings, I admit, on my part, that a probate without proof of delivery, is neither a literal nor substantial compliance with the requisitions of the Statute. Where a deed is not witnessed officially, as authorized by the 32d section of the Registry Acts, (*New Digest,* 172,) it must be "*proved*" by one or more of the subscribing witnesses. Is the mere statement upon oath, that the conveyance was *signed and sealed, proof* of its *execution?* Delivery is essential to the true execution of a deed. It would seem, therefore, that proof of delivery was necessary, before it could be legally recorded.

[5.] It has been held, that if a deed be signed, sealed and declared by the grantor, in the presence of the attesting witnesses, to be delivered as his deed; it is an effectual delivery, if there be nothing to qualify the delivery, notwithstanding the grantee was not present, nor any person in his behalf, and the deed remained under the control of the grantor. 4 *Kent's Com. 5th edition,* 456, (*note a.*)

Had the proof of Mesham gone to this length, it would have been sufficient. It is true, that in the attestation clause, it purports to be delivered, and this, it might be argued, was equivalent to a formal declaration of delivery by the grantor. But it purports to have been signed and sealed also. If one of the requisites, namely, that of delivery, may be dispensed with, why not either or both of the others?

[6.] The delivery of a deed may be inferred from its possession by the grantee, or from his possession of the land under the deed. But that does not meet the difficulty. If the deed was insufficiently proven, it was improperly admitted to record; and *therefore*, the record, or copy of said deed, could not be legally read.

Plaintiffs next read in evidence a copy deed from James Moore to Morgan L. Brown, to the land, and tendered a deed from Brown to Croxton, the defendant in execution, which the claimant objected to also, on account of the defect in the probate. Henry Johnson, one of the attesting witnesses, swore that he "saw Brown *assign* the within deed, and that Edmund D. Holdridge *assigned* with him at the same time, as a subscribing witness." The objection was overruled, and the testimony permitted go to the Jury.

If the Court erred in suffering a copy from the record of the lost deed to be read in evidence, there can be no question as to this, the probate being still more defective in this case than the former.

This mode of admitting copy deeds from the records, is a very great relaxation of the Common Law rule, and has been productive of endless frauds in this State. And while a rigid practice or construction would work inconvenience, still it may not be amiss to remit parties to original proof, where the requisites of the Statute have not been complied with.

[7.] The plaintiff then offerred to read to the Jury an *alias fi. fa.* under which the levy had been made, issued by Frederick D. Wimberly, Clerk of the Inferior Court of Stewart County, in January, 1846, in lieu of an original execution, alleged to have been lost or destroyed, pursuant to an order passed at the July Term, 1845, of said Court. This evidence was objected to, on the ground that the original *fi. fa.* was issued by John S. Yarborough, former Clerk of the Inferior Court, in 1839, upon a judgment obtained in said Court, at the November Term, 1839. And it was insisted that a copy should have been established, instead of issuing an *alias fi. fa.* But this objection was overruled, and the testimony allowed.

[8.] We are clear, that under our Statutes, this *alias execution* could not properly issue. In England, the writ of *fieri facias* is not executable, after the time to which it is returnable, unless kept open by special order of the Court. Here, it need not be renewed, until the money can be made, provided it be kept alive by the proper entries. If the original be lost or destroyed, a *copy* should be established, under the rules of Court. If the execution becomes dormant for the want of any action within seven years, and the judgment has to be revived, in that case an *alias* execution would issue. The proceeding is, in that event, similar to that at Common Law, where the money has not been made by the return term of the *fi. fa.*—otherwise, a *copy* only should issue in lieu of the original.

But the *alias* execution having issued in this case, by order of a Court of competent jurisdiction, it cannot be collaterally attacked and set aside, while the judgment of the Court stands.

The plaintiffs having closed their case, claimant introduced one Daniel Matheson, who swore that he was Sheriff of Stewart County, in 1842, and in that character, raised a large sum of money by levy and sale of Gideon H. Croxton's property; and that William A. Fort, the assignee of Shields & Ball, notified him to hold up the money on account of his lien, which was the oldest against the defendant; that in compliance with this notice, he did retain the money, until sometime afterwards, when, with the consent, and by the instructions of Fort, he appropriated eighty or a hundred dollars of the fund.

[9.] Claimant exhibited his title to the Jury, and the testimony being closed, the Court charged the Jury, among other things, that forasmuch as the money was not brought into Court by the execution in favor of Shields & Ball, but under a junior *fi. fa.* that the payment of the eighty or a hundred dollars to the junior lien, by Matheson, under the instructions of Fort, did not operate as a credit, *pro tanto*, upon the older lien.

In our judgment, this instruction is directly in the teeth of the decision of this Court in *Newton vs. Nunnally*, 4 *Geo. Rep.* 356.

[10.] After the Jury had retired to their room, one of the body

returned into Court with the Bailiff, and announced to the Judge, that he and his fellow Jurors disagreed, as to whether the execution of Sheilds & Ball had been levied on Croxton's property and raised and brought the fund into Court, concerning which Matheson testified; *Cathy*, the Juror, maintained that it had been levied, but his fellows were of a contrary opinion. He asked the Judge how the fact was; who stated that there was no evidence introduced upon the trial, going to show that the execution of Shields & Ball had been levied, or had brought the fund into Court. To which declaration of the Court, counsel for the plaintiff excepted. See the Act of 21st February, 1850, *Cobb's Digest*, 462.