## HANSEN *v.* OWENS *et al.*

1. The presumption of the duration of life, with respect to persons of whom no account can be given, ends at the expiration of seven years from the time when they were last heard of as living.

2. Where it is sought to raise a presumption of death, by reason of the absence of a person from his known place of residence or domicil for seven years without being heard from, by the testimony of a witness who merely makes inquiry to lay the foundation for such proof and who himself is not cognizant of any of the facts, the evidence must show that there has been an unsuccessful effort to find the absent person by search and diligent inquiry at his last known place of residence and among his relations or acquaintances, if any, and' it must appear that the absent party has not been 'heard from for seven years or more by those who would be most likely to hear from him.

3. Evidence of absence of a person from his original place of residence will not raise the presumption of death, where it appears that he has moved to another place and there located.

4. Where a deed was executed by some of the children of a deceasd person as 'his heirs-at-law, and it appears that there were other children and descendants of children, but it is sought to show that those who executed the deed inherited the entire estate by virtue of the death of the other descendants of the testator, presumed to arise from their absence unheard from for more than seven years, there must be some evidence as to their status when last heard from, in respect to being married or having other heirs.

5. Although plaintiffs may claim the right to recover land by virtue of prescriptive title and prior possession, as well as on account of a paper chain of title, yet where it was necessary, in order to sustain such a chain, to show inheritance by certain persons from others, and the proof on that subject was inadequate at least as to some of them, a

charge in reference to a presumption of death, which was not properly adjusted to the evidence and which was calculated to mislead the jury, was erroneous.

6. If a deed purports to be executed in the presence of, and is attested by, an officer authorized to make such attestation and another witness, and is recorded, presumptively the signature is genuine. But this may be disproved and the signature shown to be a forgery.

(a) Evidence that the person who purported to sign the deed could not write is admissible for that purpose, and is for the consideration of the jury.

(b) In such a case, if the jury believed from the evidence that the person whose name appeared to be signed to the deed in writing could not write, and therefore did not in fact personally sign it, no presumption of law would arise that he had authorized some other person to sign it for him. One who sought to set up such fact would carry the burden of proving it. Atkinson, J., dissenting.

7. In order for a deed to convey perfect title it must be signed by all the persons owning the land as tenants in common; but a deed which purports to convey the entire title may operate as color of title although it is not signed by all the owners; but as against the other owners it must be accompanied by adverse possession of such a character as would affect them.

(a) The deed from certain persons purporting to convey as the heirs of Hiram Waller, deceased, did not on its face indicate a conveyance of a fractional part of the lot or less than the whole.

8. The evidence did not authorize a recovery, in this action, of expenses of litigation against the defendant.

Argued November 3, 1908.—Decided May 15, 1909.

Complaint for land. Before Judge Whipple. Ben Hill superior court. January 11, 1908.

*Jay & Jay* and *Haygood & Cutts,* for plaintiff in error.

*Edgar Latham* and *E. W. Ryman,* contra.

ATKINSON, J. John S. Owens and Edgar Latham brought an action against F. J. Hansen, to recover certain land, together with mesne profits and expenses of litigation, including attorney's fees. They obtained a verdict for the land and also for $445 for expenses of litigation. The defendant moved for a new trial, which was refused, and he excepted.

1-5. The plaintiffs relied on a paper chain of title coming down from the State to them, upon title by prescription, and upon prior possession. The State granted the land lot, including the land sued for, to Hiram Waller. One link in the chain of title set up by the plaintiffs was a deed from four persons described as heirs-at-law of Hiram Waller, deceased, to E. H. Moore. In order to support the contention that their claim of title was com-

plete it was necessary to show title from Hiram Waller. He did not make a conveyance to them, but they contended that he died intestate, and that they held a deed executed by all of the heirs of Hiram Waller. The date of his death does not appear, but there was testimony tending to show that he died in Bryan county, intestate, at the advanced age of 90 years, leaving surviving him three daughters and five sons, all of whom at the time of the trial of the case were claimed to be dead, except one son and one daughter. The dates of the death of those deceased nowhere appear. The deed relied upon by the plaintiffs as a conveyance by all of the heirs-at-law of Hiram Waller was executed in 1884, and was signed by only three of the sons and one daughter, who, it was contended, were the only sons and daughter of Hiram Waller then in life. The several sons and daughters who had died previously to that time had all been married and had had children, but the evidence does not disclose where they lived or whether any of them survived their respective parents. Under these facts it could not be said that the deed under which the plaintiffs claimed was the deed of all of the heirs of Hiram Waller. The evidence does not affirmatively show that the title of the deceased sons and daughters of Hiram Waller descended by inheritance to the surviving sons and daughters who executed the deed in 1884, or that the latter otherwise acquired the title of the said sons and daughters. See 14 Cyc. 100; Skinner *v.* Fulton, 39 Ill. 484.

In order to account for the descendants of Hiram Waller other than those who signed the deed, and to raise a presumption of death of such descendants, one of the attorneys for the plaintiff testified, that he went to Bryan county and to Savannah, Chatham county, and undertook to locate all of the descendants of the children of Hiram Waller who had died before the deed was made by the four heirs to Moore in 1884; that he could not find anybody who had heard of them in years and years,—he thought it was about 15 years since anybody had heard of where they were. A son and a daughter of Hiram Waller testified by interrogatories. The son testified, that in 1884 two daughters and a son of Hiram Waller were dead, and that he thought another son named James was also dead, but did not know; that the deceased son first mentioned left three children living, whose names he gave; that one of the deceased daughters left four children, whose names he

stated; that he thought that the other daughter had one or two children; that he did not know where any of these children "live now," that is, at the time the testimony was delivered; and that James had no children living "in this country." The daughter of Hiram Waller, who was a witness, testified, that in 1884 she and three of her brothers were living; that "James went to California when he was 21, and has been since reported dead;" that one of her deceased brothers and two sisters had living children at the time of their deaths. Neither of these witnesses was asked as to the residence of the descendants of Hiram Waller when last heard from, nor did they testify that they had not heard from them within seven years, or that they did not know what had become of them, except that the son stated that he did not know where they lived at the time of the trial. Neither was it shown that any inquiry had been made of these two witnesses, or of any particular person, or of what person or persons, to ascertain where these descendants lived or what was their last known place of residence. In general terms one of the attorneys for the plaintiffs, as above recited, stated that he had made inquiry in Bryan county and in Savannah, and could not find anybody that had heard of them in about 15 years. Why the inquiry was made in Chatham county is not apparent; nor in Bryan county, except that Hiram Waller and some of his children seem to have lived there. Whether those who had died leaving descendants continued to live there until their death, or whether their descendants ever lived there, was not proved.

The presiding judge on this subject gave the following charge: "I charge you in connection therewith that the death of a party is presumed by the law when he has been absent 7 years without being heard from, absent himself. The absence means from the locality where such party has lived before, and is away from; and not being heard from means not heard from in the locality which had been his home and where he had lived; and wherever under such circumstances a party has not been heard from in seven years since last heard from, the law presumed him to be dead."

As to James it is not very clear whether he went to California and located there at some particular point as his home, or whether he merely went away. There was some evidence that it had been

reported that he had died, and perhaps the testimony of his brother and sister might have authorized a finding as matter of fact that he was dead; or if he merely went abroad and had not been heard from at his former home in more than seven years, this might raise a presumption that he was dead. But we are now dealing, not with the sufficiency of evidence to authorize a finding of the fact of death, but with the question of whether a presumption of death has arisen. As to the other descendants of Hiram Waller there was no statement of reputed death in the family, but it was only as above set out. Under this testimony we think that the charge quoted was calculated to mislead the jury, and to lead them to infer that they might find that a presumption of death as to all of the descendants of Hiram Waller, except those who signed the deed, had been raised. A presumption of death may arise where a person has been absent from his known place of residence or domicil for seven years without being heard from. In order to show that he has not been heard from by a witness who merely makes inquiry for the purpose of making proof which will raise a presumption of death, and who himself is not cognizant of any of the facts, the evidence must show that there has been an unsuccessful effort to find the absent person by search and diligent inquiry at his latest known place of residence and among his relations, or acquaintances, if any; and it must appear that the absent party has not been heard from within seven years by those who would be most likely to hear from him. Mere absence is not sufficient to raise the presumption. A person may be absent from his home or from his last place of residence in this State for many years on business or for other sufficient reason, but may have been heard of by his family or friends. Or a person may move from one locality and establish a residence or domicil in another. Evidence of absence from his original place of residence will not raise the presumption of death, where it appears that he has moved to another place. Gray v. McDowell, 6 Bush (Ky.), 475; Keller v. Stuck, 4 Redfield (N. Y.), 294. See, on the general subject, *Cofer* v. *Flanagan,* 1 *Ga.* 538; *Adams* v. *Jones,* 39 *Ga.* 479; *Watson* v. *Adams,* 103 *Ga.* 736 (30 S. E. 577); 13 Cyc. 301.

Furthermore, the object of evidence introduced for the purpose of raising a presumption of death as to the descendants of Hiram

Waller must have been to show that those of his sons and daughters who executed the deed to Moore acquired by inheritance a complete title to the land. In order to show this it would be necessary for the evidence to indicate that they died under such circumstances as would make the four signers of the deed their sole heirs, they having died after Hiram Waller's death. If the descendants thus sought to be accounted for married or left children or other heirs, the four signers of the deed would not be the owners of the entire title by inheritance. There was no evidence at all as to whether the descendants referred to were married or single or childless, when last heard from, or whether they still lived.

It was contended on behalf of the defendants in error that the evidence authorized a recovery of the land by them on the grounds of prescription and of prior possession; but, as above stated, they did not rely on those grounds exclusively. They also relied on the existence of a chain of title coming down to them under Hiram Waller through persons claiming to have inherited the entire land. As to this contention it was necessary that there should be some proper evidence and a proper submission of the question to the jury so far as the evidence authorized. We can not tell how far the jury may have been influenced in finding their verdict by the theory that the four persons who signed the deed as heirs of Hiram Waller thereby conveyed the entire title which he had acquired by grant from the State. The charge on this subject, which the court gave broadly, as above stated, was not warranted by or appropriate to the evidence in the case, and under all the evidence the error was substantial and harmful.

6. One ground of the motion for new trial complains of the following charge: "I also charge you in that connection that wherever such an issue is made, and the jury should believe from the testimony, under the rules as I have given them, that if a particular grantor of the defendant could not write at the time the deed was made—is alleged to have been made, and the jury should further find from the evidence that the deed so attacked as having been alleged to have been made by him is in fact signed in writing, that fact of itself would be a circumstance that the jury would be authorized to consider, along with all the other evidence in the case upon that point, in determining what is the truth of that issue; and wherever the jury believe from the evi-

dence that a grantor could not write, and a deed is introduced, and after being introduced is attacked, where it is signed by him in writing, then there is no presumption of law that such deed was signed by some party authorized by said grantor, but the burden would be upon the party offering the deed to show that such was the case, if the case, all of which is to be passed upon by the jury." As to the correctness of this charge the court is not unanimous in opinion, though they are in accord as to all other points involved in the case. In regard to the question involved in this charge, the opinion of the majority of the court, as prepared on their behalf by Justice Lumpkin, is as follows:

An affidavit of forgery may be filed and a special issue made on a recorded deed; if found against the deed, such deed can not be admitted in evidence. Or, if no affidavit is made, and the deed is apparently regular and properly attested and recorded, it may be put in evidence. Nevertheless the adverse party may then attack it by evidence as a forgery. The exact question is this: If the deed appears to be regularly signed by the purported grantor, and is introduced in evidence, but, under the evidence introduced, the jury should find that the purported grantor could not, and therefore did not, sign his name to the deed, will it be presumed, because of the "attestation" of a notary public, that the purported grantor authorized some other person to sign for him, or is that a matter for determination under the evidence, rather than a matter of presumption?

As the term is ordinarily understood, to sign an instrument indicates the signing with one's own hand. Among the definitions of the word "sign," given in Webster's Dictionary, are "to affix a signature to; to ratify by hand or seal; to subscribe in one's own handwriting." And among the definitions of the word "signature" are the following: "A sign, stamp, or mark impressed, as by a seal. Especially the name of any person written with his own hand, employed to signify that the writing which precedes accords with his wishes or intention; a sign manual; an autograph." In the Political Code, §5, it is said that "Signature, or subscription, includes the mark of an illiterate or infirm person." If a witness should testify on the stand that he saw a grantor sign a deed, in the common use of language every man would understand him to mean that he saw the grantor himself subscribe

his name, or make his mark. From this statement no one would understand the witness to mean that he saw the grantor call in some third person and authorize such person to write the name of the grantor or make a mark for him in his presence. Whether a signature made by another in the grantor's presence and at his request or with his authority would be sufficient to bind him, if proved, has caused some discussion. The case of Gardner v. Gardner, 5 Cush. 483 (52 Am. D. 740), is the leading case holding that it would be so, and it has been followed by the current of authority, though not without criticism. See Browne, Stat. Frauds (5th ed.), §§10-12b; Wallace v. McCullough, 1 Rich. Eq. 426. It has been so held in Georgia. Ellis v. Francis, 9 Ga. 325, where a constable who wrote a poor hand requested a justice of the peace, in his presence, to make an entry of "no property" on two justice-court executions, the constable knowing the return to be true of his own knowledge. In Merchants & Farmers Bank v. Johnston, 130 Ga. 661 (61 S. E. 543, 17 L. R. A. (N. S.) 969), where an agent, at the instance and in the presence of a member of a partnership, signed the firm name to a promissory note, it was held binding. We are not contesting, therefore, the fact that a signature, if proved to have been thus made, would be binding; but we deny that the existence of such a state of facts can be assumed as a presumption of law. The leading case of Gardner v. Gardner, supra, furnishes an apt illustration. The signature to the deed there under consideration was "Polly Gwinn by Mary Gardner." The attesting witness testified that when it was time for the grantor to sign, her daughter, Mary G. Gardner, offered to sign for her, and did so in her presence and with her assent expressed by a nod of the head. This was held sufficient to bind the grantor; but certainly these facts would not have been presumed without evidence; nor in this State would such a signature, though attested by a notary public, be presumed to have been authorized by being done in the presence of the grantor or by reason of an unproduced power of attorney. In the two cases in this State above cited, if nothing more had been proved than that the name of the officer in the one case, or that of the firm in the other, was not in the handwriting of the officer or a partner, the law would not have presumed other affirmative facts which would have made the signature binding, because of the general legal presumption that

all men perform their legal and social duties. The existence of such facts is matter of proof, not of presumption. So far as our examination of authorities has gone, wherever it has been held that the signing of the grantor's name in his presence and at his request by another would suffice, the facts have been proved, not presumed. The only case which has come to our notice in which the word "presumption" is used at all in that connection is Hogans *v.* Carruth, 19 Fla. 84. In that case an ancient deed was offered in evidence, and objection was made to its admission. It was shown that the deed came from the proper custody, that some of the parties could not write, and that their names were signed in the handwriting of a person present at the time, and not a party in interest. It was held to be admissible in evidence; and it was said that under these facts, and there being "neither charge nor evidence of fraud," the presumption was that the signatures were made at the request of the purported makers. Strictly this was inferable rather than a presumption; and only arose after evidence of the facts. In 2 Jones on Real Property, §1014, it is said: "The fact of the execution of the deed by the hand of another, under the immediate direction of the grantor and in his presence, must be affirmatively shown by the party relying upon the deed. The proper execution of the deed can not be left to inference." In Videau *v.* Griffin, 21 Cal. 389, it was held that "The fact that the execution was in the presence of the principal must be affirmatively established by the party who relies upon it as an excuse for the absence of a power in writing, and it is not to be inferred from any coincidence between the date of the deed and an acknowledgment of the principal that it was executed by his attorney." In that case the deed was signed by "John A. Clark, by his attorney, Henry Sparks," and on the same day a notary public made a certificate, "Personally appeared before me, John A. Clark, to me known, and who executed the within deed, and acknowledged the same to be his free act and deed, by his attorney, Henry Sparks," which was signed by the notary but not by the grantor.

A signature actually made by a grantor himself is good. If shown to have been made by another in his presence and at his request, it will bind him, especially when he delivers the deed as his own. Although a signature may not be made in either of these modes, but the grantor's name may have been signed by another

not in his presence, he may adopt such signature as his own, and may acknowledge it as his signature before a proper officer; or he may estop himself from denying it, by allowing others to act on it. 1 Devlin on Deeds (2d ed.), §235; Bartlett *v.* Drake, 100 Mass. 174 (97 Am. D. 92); *Vickers* v. *Hawkins,* 128 *Ga.* 794 (58 S. E. 44); *McCalla* v. *American Freehold etc. Co.,* 90 *Ga.* 113 (15 S. E. 687). Again, where a deed is executed by an agent, the advisable and most correct mode for the agent to adopt is to sign the principal's name by himself as attorney in fact. In some of the earlier cases it was held that this must be done; but in a number of later cases the disposition has been towards relaxing this rule, and holding that if the attorney has due authority, as such, to execute a deed in the name of his principal, "it can not be said that it is indispensable to the valid execution of his power that he should add his own name to the instrument which he executes for his principal," and that his signing of the principal's name alone, though not desirable, is not invalid. 1 Devlin on Deeds, §§377-380. Thus, although the grantor may not sign his own name to a deed, there are several circumstances which will render the signing of his name by another as valid and binding upon him as if signed by his own hand. If the contrary argument on this subject is sound, when a deed is attested by a notary public or other officer authorized so to do, and recorded, although it may be shown that the purported grantor did not in fact himself sign it, this would not suffice to rebut the general presumption in favor of official conduct, but the burden would rest upon the party denying the genuineness of the deed to go further and negative the possibility of the existence of any of the other circumstances to which reference has been made. Thus he must disprove the possibility that the grantor authorized another to sign in his presence; and logically he should also be required to show that the grantor never adopted the signature of another; or that he never estopped himself by allowing others to act upon the faith of the signature being genuine; or that the deed was not executed by an attorney in fact who held a power of attorney but failed to note the existence of the agency. We do not see how the argument adverse to the position here taken can logically stop short of requiring disproof of all these possible modes by which a signature written by the hand of another than the grantor might be binding on him. We

42

think that when a recorded deed has been introduced in evidence and where the signature purports to have been written by a certain person, and the jury are satisfied from the evidence that it could not have been, and therefore was not, so written, then if it is nevertheless claimed to be binding for any of the reasons which might legally make it so, aside from the manual execution by the grantor himself, and which would be held in law to be equivalent thereto, this would be a matter of proof, not presumption. Any other rule would in many instances place upon a person attacking a recorded deed, after its introduction in evidence, practically an impossible burden to negative conjectural occurrences.

The entire argument to support a different ruling rests upon the presumption in favor of a proper discharge by an officer of his official duty. This is a branch of, or closely allied to, the broader presumption that every man obeys the mandates of the law, and performs all of his official and social duties. 4 Wig. Ev. §2534; Truluck v. Peeples, 1 Ga. 5, infra. But that presumption, as to non-official persons, has never been carried to the extent of taking the place of necessary evidence of matters in pais. As to officers, the presumption is somewhat stronger, partly, no doubt, because more specific duties are imposed upon them by law, and partly because they are sworn and commissioned to discharge such duties. The law authorizing the recording of deeds in this State is somewhat different from that in force in many other States. It declares, that, "In order to authorize the record of a deed to realty or personalty, if executed in this State, it must be attested by a judge of a court of record of this State, or a justice of the peace, or notary public, or clerk of the superior court, in the county in which the three last-mentioned officers respectively hold their appointments; or if subsequent to its execution the deed is acknowledged in the presence of either of the named officers, that fact, certified on the deed by such officer, shall entitle it to be recorded." Civil Code of 1895, §3620. This section of the code provides two modes under which a deed may be recorded: first, if it be "attested" by any of the officers named; second, if it be acknowledged in the presence of such an officer. Section 3623 provides, that, "If a deed is neither attested by, nor acknowledged before, either of the officers aforesaid, it may be admitted to record upon the affidavit of a subscribing wit-

ness, before either of the above-named officers, testifying to the execution of the deed and its attestation according to law." The rule in many other States is to require an acknowledgment before a designated officer, and not merely that the instrument be "attested." If there were an acknowledgment of a signature as genuine, a different question would be presented. Of course, the presumption is that such certificate of acknowledgment is true. When likewise the officer signs a statement that he saw the grantor sign, seal, and deliver a deed, the presumption is that that is true unless the contrary appears. But if it be established by the evidence to the satisfaction of the jury that in fact the grantor did not sign the deed personally, the presumption of the discharge of official duty by the attesting officer will not suffice to prove that the grantor authorized some other person to sign the deed for him either in his presence or in his absence. That is an affirmative fact to be established by proof, not a matter in which a presumption of discharge of duty by an officer can take the place of evidence. None of the authorities cited in support of that position go to such an extent, and we have found none which do so.

In *Truluck* v. *Peeples*, 1 *Ga.* 3, a deed had the attesting clause, "signed, sealed, and delivered in presence of," and was signed by the grantor with his mark, and by two attesting witnesses. Immediately under these signatures were the words, "Acknowledged in the presence of me," followed by the signature of a justice of the peace. It was held, that, in the absence of all proof to the contrary, the presumption was that the acknowledgment before the magistrate was made where the deed itself purported to have been executed. In *Rushin* v. *Shields & Ball,* 11 *Ga.* 636 (56 Am. D. 436), a deed was probated for record by a subscribing witness, who made affidavit that he saw the grantor sign and seal the deed for the purposes therein named, and that he saw also the other subscribing witnesses sign. It was held that this was not a sufficient proof of delivery and execution to authorize the deed to be recorded. And see *Stanley* v. *Suggs,* 23 *Ga.* 137. In *Dinkins* v. *Moore,* 17 *Ga.* 62, a deed concluded with the statement that the grantor had thereto set his hand and seal, and had delivered the property by the symbolic tradition of a penknife. Below this were the words, "in the presence of," followed by the signature of two witnesses, one of whom was a justice of the peace. It was

held that the deed was sufficiently attested to admit it to record, "and the conclusion of law, from this general form of attestation, is, that the subscribing witnesses saw the grantor sign, seal, and deliver the deed, for the purposes therein mentioned." In the opinion the case was distinguished from that of *Rushin* v. *Shields & Ball,* supra, by saying, "To make the cases parallel, the form of attestation in the deed before us should have been, signed and sealed in our presence, or in the presence of, &c. The inference would then have been that the subscribing witnesses did not see the deed delivered." The opinion concludes with the following general statements: "Our opinion is, that under such an attestation clause, if neither of the witnesses be an officer, any one of them may prove its execution by making the usual oath. And if one of them be a magistrate, the officer appointed by law to perform this duty, the conclusion of law is that he saw the instrument legally executed; that is, signed, sealed, and delivered." Considering this in the light of the facts, it was equivalent to saying that a certificate which in effect stated that the magistrate saw the grantor set his hand and seal to the paper and deliver it was presumptively true. In *Highfield* v. *Phelps,* 53 *Ga.* 59, it was held, by two Judges, that if one of the attesting witnesses to a deed be a magistrate, the presumption of law is that he saw the instrument legally executed—that is, signed, sealed, and delivered, so as to authorize the same to be admitted to record. Warner, C. J., cited *Dinkins* v. *Moore,* supra, as authority for this position, though in the case then being considered there was no statement of delivery. Perhaps, on the theory that a complete execution includes delivery, the attestation by a proper officer of "the execution" of a deed, may include its delivery. The writer, however, would suggest that it may be doubted whether there is any law which imposes upon the officer the duty of seeing that a deed which he attests is actually delivered to the grantee; and it is common knowledge that a very large part of the instruments which are signed before and attested by an officer are not in fact then delivered to the other party, and some of them are never delivered. Due attestation by an authorized officer and another witness will suffice to admit a deed to record, and by that decision this is true even without the use of the word "delivered." The record itself is evidence of delivery. *Stallings* v. *Newton,*

110 *Ga.* 875 (36 S. E. 227). But the decision in *Highfield's* case does not extend to presuming any such state of facts as is now sought to be covered by a presumption. In *Granniss* v. *Irvin,* 39 *Ga.* 22, a deed appeared on its face to be regularly attested, one of the witnesses being a justice of the peace. The ink used in writing his name was different from that used in writing other parts of the paper, and on the back of the deed were the words of an affidavit for probating it, but not executed. The deed was recorded. When offered in evidence, objection was made on the ground that the circumstances mentioned indicated that the justice had signed the deed at a time different from that of its original execution. This court held that it was admissible. McCay, J., said: "The presumption of law is that the magistrate signed it in the county and at the time appearing on the face of the deed. Prima facie, also the signatures are genuine. The deed *appearing* to be properly attested and admitted to record, the presumptions are in its favor." None of these cases deal with any presumption of a signing for the grantor by another in his presence and at his request.

In *Walker* v. *Logan,* 75 *Ga.* 759, an affidavit of forgery was made, and the issue tried separately. The jury found the deed to be a forgery, and this verdict was sustained. The only facts mentioned by Jackson, C. J., who delivered the opinion, were that the deed was executed in 1835, and not recorded till 1883, which he said was a very strong evidence or circumstance of want of genuineness; "and the fact that the grantor could not write his name, which is in writing on the deed, is stronger—I had almost said conclusive—evidence of forgery; and the additional evidence that he swears by interrogatories, signed only by his cross-mark, that he did not sign or make any such deed, would seem to clinch the truth of the verdict which pronounced it a forgery. On the other side, to overcome this overwhelming evidence, is testimony that the witnesses delivering it on the stand believe that the handwriting of the two dead witnesses to the deed is genuine. It is a feather weighing in scales against a ton of iron." In the present case there was no affidavit of forgery; but to rule otherwise than we do would result in holding that absolute proof, satisfactory to the jury, that the grantor could not sign his name, and therefore did not do so, would not at all suffice to

rebut a mere presumption arising from the attestation of a notary public. This would seem to reverse the idea of Chief Justice Jackson, and hold that proof that the grantor could not write was a feather of evidence weighing in the scales against a ton of presumption. . . .

The trial judge charged, in effect, that if the jury believed that the purported grantor could not, and therefore did not, write his name, whether or not he authorized some other person to do so was not a matter of presumption. We think he charged correctly. The views of Justice Atkinson in regard to the charge quoted above are as follows:.

The charge has reference to a deed conveying land with the name of the grantor signed thereto and attested by two witnesses (one of whom was an officer authorized by law to attest deeds), and duly recorded. No affidavit of forgery was made under the Civil Code, §3628, so as to cast the burden of proving the genuineness of the deed upon the party relying on it. Such a deed was admissible in evidence without further proof of its execution, and all presumptions were in favor of its genuineness. *Granniss* v. *Irvin*, 39 *Ga.* 22, 24. The attesting clause recited: "Signed, sealed, and delivered in the presence of" the witnesses. If the grantor did not sign with his own hand, but stood by and directed another to sign for him, and it was signed in his presence, such act of signing would not in law be the act of an agent, but would be signing by the grantor. *Ellis* v. *Francis*, 9 *Ga.* 325; *Vickers* v. *Hawkins*, 128 *Ga.* 794, 799 (58 S. E. 44). In dealing with this rule the Supreme Court of Massachusetts at an early date, in the case of Gardner *v.* Gardner, 5 Cush. 483-4 (52 Am. D. 740), Chief Justice Shaw rendering the opinion, among other things, said: "The name being written by another hand, in the presence of the grantor, and at her request, is her act. The disposing capacity, the act of mind, which are the essential and efficient ingredients of the deed, are hers, and she merely uses the hand of another, through incapacity or weakness, instead of her own, to do the physical act of making a written sign. . . To hold otherwise would be to decide that a person having a clear mind and full capacity, but through physical inability incapable of making a mark, could never make a conveyance or execute a deed; for the same incapacity to sign and seal the principal deed would

prevent him from executing a letter of attorney under seal." See also Devlin on Deeds, §§232-3; Jones on Law of Real Property in Conveyancing, §§1014-15. In the light of the rule above announced, the attesting certificate quoted from the deed now under consideration would not be inappropriate, although the deed was not signed by the grantor himself, but by another in his presence, at his request. The fact that the grantor could not write would not contradict the certificate; nor would it necessarily follow, merely because the grantor could not write, that the signature to the deed was placed there improperly, or was a forgery. There was no attempt to show that the signature of the attesting officer was forged. It stands unchallenged and prima facie genuine. All the presumptions are in favor of his having done his duty. *Scott* v. *McDaniel*, 64 *Ga.* 780; *Wiggins* v. *Gillette*, 93 *Ga.* 22 (19 S. E. 86); *Kirk* v. *State*, 73 *Ga.* 628; *City Council of Augusta* v. *Pearce*, 79 *Ga.* 100 (4 S. E. 104); *McRae* v. *Adams*, 36 *Ga.* 444; Throop on Pub. Off., §558; *Ford* v. *Ford*, 27 App. Cas. (D. C.) 401 (6 L. R. A. (N. S.) 442, 7 A. & E. Ann. Cas. 245, and notes, p. 250). If he did his duty, he would not have placed his signature to the attestation of the deed unless it had been executed by the grantor in such manner as to have made the act of signing the deed the act of the grantor himself. Conceding the genuineness of the signature of the attesting officer, to hold that he was derelict in duty in the manner contended for would in effect be to impeach his official act by a mere circumstance which did not necessarily conflict with what his signature purported to attest. The circumstance relied on to impeach the verity of the officer's certificate, namely, that the grantor could not write, is at most equivocal, and is consistent with either the theory that the instrument is a forgery or that it is genuine. To impeach the certificate of the officer there should be no equivocation, but the evidence should affirmatively and necessarily contradict it. All the presumptions being in favor of this duly recorded deed, there is a presumption that it was the genuine deed of the grantor; and it was inaccurate for the judge to instruct the jury as a matter of law that the presumption in favor of the genuineness of the deed was destroyed by mere proof of the fact that the grantor could not write. Such in effect was the charge of the court to which exception was taken. In the case of *Walker* v. *Logan*, 75 *Ga.* 759,

760, Jackson, Chief Justice, said: . "The verdict that the deed is a forgery and not the genuine deed of the grantor is supported by the evidence. The fact that, though executed in 1835, it was not recorded until 1883—nearly a half century thereafter—is a very strong evidence or circumstance of want of genuineness; and the fact that the grantor could not write his name, which is in writing on the deed, is stronger—I had almost said conclusive—evidence of the forgery." This language imports that the writer, though giving great weight to the circumstance, did not consider the fact of the grantor's inability to write sufficient to prove forgery "conclusively," so as to authorize the court to take the question from the jury and decide it as a matter of law. Moreover in that case an affidavit of forgery was filed under the provisions of the Civil Code, §3628, which, under the ruling in *Holland* v. *Carter*, 79 *Ga.* 139 (3 S. E. 690), cast the onus upon the party relying on the deed to prove its genuineness. The case of *Anderson* v. *Cuthbert*, 103 *Ga.* 767 (30 S. E. 244), referred to a paper (a certificate dated January 10, 1891) which was not the foundation of the action and was not attested by an officer and was not recorded or entitled to record so as to authorize its introduction in evidence without proof of execution. Dealing with the question of forgery relative to that paper, it was said by Little. J. (p. 773): "The law presumes nothing whatever until the signature to the instrument is proven genuine. This being done. the law then presumes that the instrument in all its parts is genuine also, when there are no indications to be found upon it to rebut such a presumption." As the paper there under consideration was not recorded or attested by an officer authorized by law to attest deeds, there was no question before the court which authorized a ruling relative to presumptions in favor of the acts of public officers or presumptions relative to the genuineness of duly recorded deeds attested by an officer authorized by law to witness deeds. The language of the court in dealing with the law of presumptions is somewhat equivocal, but, as it was obiter, its construction is not of supreme importance in the present case.

7. The defendant requested the court to give in charge certain instructions. The substance of all of them was, that if Hiram Waller had several heirs or descendants, and if only four of his sons and daughters joined in an effort to convey his title, as being

his heirs, and under this deed a chain of conveyances came down to the plaintiffs, they acquired no more than the interest which the four heirs of Waller could convey, and in no event could recover more than that. There was no error in refusing these requests. The plaintiffs relied not merely upon a paper chain of title, but also upon prescriptive title and prior possession. In so far as their claim of title rested upon a paper chain, they could only recover what that chain conveyed to them; but in so far as it rested upon prescription or prior possession, it was possible for them to recover, although they might not have had a perfect title by the chain of conveyances to the entire estate. Where prescriptive title is claimed under possession and color of title, the color does not have to be perfect title in order to ripen by prescription. The instrument on which the prescription is based must purport to convey the title prescribed for; but if it were essential that it should actually convey a good title, the difference between perfect title by chain and title by prescription would practically be valueless, and title and color of title would become synonymous. *Street v. Collier*, 118 *Ga.* 470 (45 S. E. 294). This is not a contest with the other descendants of Hiram Waller, or persons claiming under them; and hence no question of ouster or notice of adverse holding arises. Some of the requests to charge seem to proceed on the theory that the deed from Waller's heirs purported to convey a fractional part of the lot. But such was not the case.

8. One ground of the motion for new trial was that the verdict was contrary to law and evidence. As the case must be returned for a new trial, we deem it best not to discuss the evidence further than to say that a careful examination of it as contained in the record fails to show sufficient facts to authorize a finding of $445 for expenses of litigation. See Civil Code, § 3796. Whether or not some of the deeds in the chain of title under which he claimed were forgeries, the evidence did not make such a case against Hansen as authorized a recovery for expenses of litigation. It was urged that if the verdict for attorney's fees and expenses was not authorized, this portion of the finding was not specially singled out and complained of. But we can not say that a verdict is sustained in whole by the evidence if some part of it is not so sustained.          *Judgment reversed. All the Justices concur.*