25923. AMERICAN NATIONAL INSURANCE COMPANY
*v.* PARKER.

Decided March 3, 1937.

*Tye, Thomson & Tye, R. A. Edmondson, Jr.,* for plaintiff in error.

*John W. Bolton, Thomas E. McLemore,* contra.

GUERRY, J. On February 9, 1920, the American National Insurance Company issued a policy of insurance on the life of Allen Parker. Rosa Parker, sister of the insured, and beneficiary named in the policy, brought the present suit in September, 1935, to recover the face amount of the policy. To show the death of the insured, the plaintiff relied on the presumption of death arising from seven years absence of one from his accustomed place of abode, unheard from by those who would be most likely to hear. No witness produced at the trial testified that he had seen the insured since November, 1920. The plaintiff in error contends that the evidence produced by the plaintiff is insufficient to establish the presumption of death, for the reason that it is not shown that it does not appear that "there has been an unsuccessful effort to find the insured by search and diligent inquiry at Cleveland, Ohio," the insured's last-known residence. The plaintiff testified that she last saw the insured in September, 1920, and last heard from him in November, 1920; that he was married and had one daughter, Irene Parker, "who has been in my care and custody since she was two years old, and she is now eighteen. Up to November, 1920, I heard from my brother once a week, because he contributed every week to the support of this child; he sent ten dollars every week until the fall of 1920. The last time I heard from my brother he was in Cleveland, Ohio." Also, that the last time she heard, Allen Parker's wife was dead; and that she wrote to Henry Matthews in Cleveland, Ohio, regarding the insured. Jennie Parker, mother of insured, testified that she last heard from the insured in 1920. "Since 1920 I have wrote everywhere and tried to locate him. I have not heard a word since then." Henry Howard testified that he lived in Cleveland, Ohio, about two months in 1920; that he had known the insured all of his life; that during this time he saw the insured three or four times; that he had not seen him since 1920; that he moved to Cleveland in 1922; and "When I went back to Cleveland I inquired about Allen Parker; I inquired of my nephew. The last I heard anything

about Allen Parker in Cleveland was about the first of March, 1920. I saw him the fall of 1920. I have not heard of him or seen him since the fall of 1920." Otelia Lampkin testified by deposition, that she lived in Cleveland, Ohio, at 2194 East 97th Street; that she knew the insured and last saw him in Cleveland in October, 1920. "He was visiting at the home of my aunt on East 59th Street near Central; this was just after I came to Cleveland. . . I was friendly with Allen Parker's family for about a month in 1920. I saw Allen nearly every day, at least three times a week. Allen Parker had a little store in Cleveland, selling shirts, ties, and socks. I don't know what became of it. I have never seen him since that time." John McElroy testified by deposition, that he lived in Cleveland, Ohio, at 2194 97th Street; that he knew the insured and last saw him in Cleveland on Halloween night, 1920; that he had known the insured for a long time previously, and that when he came to Cleveland, "I saw him once or twice a week. He was running a little store on Central Avenue selling socks and shirts and things. I don't know what happened to it."

In *Rudulph* v. *Brown,* 150 *Ga.* 147 (103 S. E. 251), it was said: "In order to raise a presumption of the death of a person who moves from this State to a named point in another State, inquiry must be made at the last known domicile of the absentee at which he resided in the other State; and it must be shown, by those who would be most likely to hear from him, that he was absent and unheard of in the last place of residence for seven years." In the present case the plaintiff, a sister of the insured, and one who certainly would have been expected to hear from him had he been alive, especially since she was caring for and had in her custody his only child, testified that she had not seen or heard from him since 1920. The mother of the insured also testified that she had not heard from him since 1920, and that "I have wrote everywhere and tried to locate him." This statement was not challenged, nor did counsel on cross-examination inquire of the witness where she had written and to whom. The jury were at liberty to infer that she had written to persons in Cleveland who knew her son and would have been most likely to have heard from him had he been there. Two witnesses who lived in Cleveland, and another who lived there for a time, testified that although be-

fore 1920 they saw the insured frequently, and that he conducted a small business in Cleveland, since that time they had not seen him, and that they did not know what became of his business. Under the rule as announced by our courts, we are of the opinion that for all legal purposes a presumption of death arises from the continued and unexplained absence of a person from his home or place of residence, without any intelligence from or concerning him, for the period of seven years (*Cofer* v. *Flanagan*, 1 *Ga.* 538; *Adams* v. *Jones*, 39 *Ga.* 479; *Watson* v. *Adams*, 103 *Ga.* 733, 736, 30 S. E. 577; *National Life & Accident Insurance Co.* v. *Hankerson*, 49 *Ga. App.* 350, 175 S. E. 590); and that the jury was authorized to find that the insured was dead. It is true that in *Rudulph* v. *Brown*, supra, the Supreme Court said: "In order to raise a presumption of the death of a person who moves from this State to a named point in another State, inquiry must be made at the last known domicile of the absentee at which he resided in the other State; and it must be shown, by those who would be most likely to hear from him, that he was absent and unheard of in the last place of residence for seven years." See also, in this connection, *Hansen* v. *Owens*, 132 *Ga.* 648 (2) (64 S. E. 800). However, in our opinion, the party upon whom devolves the duty to make inquiry concerning the person missing "is required to make only such search and inquiry at such places and sources of information and from such persons as a reasonably prudent person under the same or similar circumstances would deem to be sufficient under the terms of the rule as stated. Under proper instructions, the sufficiency of the search and inquiry is one for the jury, upon consideration of the evidence" (Modern Woodmen of America v. Michelin, 101 Okla. 217, 225 Pac. 163, 36 A. L, R. 971), and the jury's determination that same was sufficient will not be disturbed by this court on writ of error, unless, from an examination and consideration of all the evidence, it can be said as a matter of law that the minds of all reasonable men should concur in holding same insufficient under the rule announced. Whether or not the plaintiff, in producing three witnesses, two of whom have lived in Cleveland, the last-known place of residence of the insured since 1920, who were intimate with the insured, and who testified that they had not seen or heard from him since 1920, and the testimony of his mother that "I have wrote every-

where and tried to locate him," disclosed sufficient search and inquiry by the plaintiff, was for the jury. Under the rulings in the *Rudolph* and *Hansen* cases, supra, the evidence was such as to authorize the jury to find the death of the insured.

■ The policy provided that the company would pay to the beneficiary, on receipt "of due proof of the death of the insured made in the manner, to the extent, and upon the blanks required herein," the amount of the policy. The defendant contends that there was no evidence showing a compliance with this provision. However, the plaintiff testified that she first wrote to the defendant concerning her claim on her policy in August, 1934. On August 4, 1934, H. W. Gray, assistant claim adjuster of the defendant company, wrote to her: "We would suggest that you consult our local superintendent, Mr. Ben T. Wages, 101 Marietta St. Building, who will be glad to advise you concerning the policy." On August 25, 1934, Ben T. Wages, local superintendent, wrote to her: "We have been advised by the home office that before considering this case further it would be necessary for you to submit a supplementary affidavit setting out the approximate date the insured was last seen or heard of in Atlanta, and also setting out the circumstances under which he left." She testified that she submitted the affidavit requested by the letter of Mr. Wages. The company retained the affidavit and her statement of her claim, without making objection thereto. We are not prepared to hold that the evidence did not warrant a finding that the defendant had waived a strict compliance with the provision for the furnishing of proofs of loss on forms to be furnished by it. This provision could be waived by conduct inconsistent with an intention to enforce a strict compliance with the condition, by which the insured was led to believe that the insurer did not intend to require such compliance. *Corporation of Royal Exchange Assurance* v. *Franklin,* 158 *Ga.* 644 (124 S. E. 172, 38 A. L. R. 626). There is no doubt that the company had notice of the claim of the plaintiff under the policy, and through its local superintendent it requested additional proof of her claim. Having requested this form of proof without notifying her that it intended to rely on the provision of the policy that she submit due proofs of loss on blanks furnished by them, we are of the opinion that the company waived a strict compliance with this provision.

■ In *Gantt* v. *American National Insurance Company*, 173 *Ga.* 323 (160 S. E. 345), it was said: "The presumption arising from seven years absence of a person from his accustomed place of abode, unheard from, raises not only a presumption of death, but also a presumption of death at the end of the seven-year period, in the absence of proof to the contrary." This principle has been applied in cases where the policy of insurance provided that an action thereon must be brought within a named period of time after the death of the insured. The present policy does not provide any definite time within which notice of death must be given, but, even so, the evidence is undisputed that the company, when it did receive notice in 1934 of the disappearance of the insured, continued to accept premiums due on the policy; and such conduct on its part would amount to a waiver of the condition that the notice be given in a particular time after the death of the insured. Granted that the beneficiary under the policy waited an unreasonable length of time, seven years after the presumption of death may be said to have fixed the date of the insured's death, the insurer, after this notice, continued to accept weekly premiums paid to it by the beneficiary, and such conduct amounted to a waiver as to the reasonableness of the time of giving notice of death.

■ Complaint is made that the court improperly admitted in evidence certain depositions which had been transmitted to the clerk and by him opened through mistake, the envelope containing the depositions not having endorsed thereon the name and number of the case. The Code, § 38-2504, declares that "all exceptions to the execution and return of commissions shall be made in writing, and notice thereof shall be given to the opposite party before the case is submitted to the jury: Provided, the same shall have been in the clerk's office for 24 hours prior to the trial." *Galceran* v. *Noble*, 66 *Ga.* 367; *Langford* v. *Driver*, 70 *Ga.* 588 (3). The object of requiring such notice is that the opposite party may move to continue, to have interrogatories re-executed, and that he may act advisedly and without surprise. It not appearing that proper objection was made, the court did not err in refusing to exclude the depositions. The certificate of the commissioner stated "The foregoing evidence of the witness . . was taken down under oath after said witness had been first duly

sworn and subscribed in my presence." This certificate does not affirmatively show that the testimony was subscribed to before it was taken down. The witness made oath and then subscribed to the evidence taken down. This showed a proper execution.
*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

·MacIntyre, J., concurring specially. I think the conduct of the defendant referred to in division 3 of the opinion amounted to an estoppel, or rather what might be termed an estoppel by waiver. See *Southern Manufacturing Co.* v. *Moss,* 13 *Ga. App.* 847 (3) (81 S. E. 263).