## 27803. PILGRIM HEALTH AND LIFE INSURANCE COMPANY *v.* SHOWS.

DECIDED OCTOBER 27, 1939.

*G. N. Bynum,* for plaintiff in error.  *Burress & Dillard,* contra.

PER CURIAM.   Ella Mae Shows, formerly Jenkins, sued the Pilgrim Health and Life Insurance Company on a policy of insurance issued upon the life of petitioner's former husband, J. F. Jenkins. The petition alleges, in substance, that the insured, before August 1, 1931, left the State of Georgia and went to Chicago, Illinois; that since that date he has not been heard from by petitioner or any one with whom he would be expected to communicate; that petitioner has made every possible effort to locate him; that she has furnished the defendant with what information she has in her possession concerning his whereabouts, and has sought the defendant's efforts to locate him, to no avail; that on September 1, 1938, the insured was presumed by law to be dead, and she alleges that he is dead; that all the premiums due under the policy have been paid; that more than sixty days have elapsed since the proofs of death were filed and demand made, but the defendant has not paid her claim and refuses to pay it; and that the refusal by the defendant to pay the amount called for by the policy is in bad faith, on account of which she is entitled to damages and attorney's fees.

The plaintiff testified, in substance, that she married the insured in 1927, and had two children by him; that they lived on Cyple Terrace; that he left Atlanta on January 17, 1931, and has not been back; that he went to several places; that in one letter he wrote that he had been hurt and was going to a hospital in St. Louis; that she received mail from him from Chicago and West Virginia; that the last letter she received was from Chicago, and was postmarked at Cicero, Illinois, August 20, 1931, and this letter gave as the return address 3519 Indiana Avenue, care of S. E. Haygood, Chicago, Illinois; that she has tried to locate the insured, and has written to the Chicago Census Commission, the Chicago Police Department and the Department of Commerce in

Washington, D. C.; that she received letters from all these, with no success in her search, and these letters were turned over to the defendant with the request that it assist in locating the insured; that the mother and father of the insured lived in Atlanta, both of whom were sick at the time of the trial; that he has a sister living there; that, as far as she knows, neither the father, mother, nor sister has heard from him; that he was on good terms with petitioner, and was fond of his wife and children, sending money after his departure from Atlanta, to be applied on the purchase of a house; that she had not consulted with the family of the insured since about two years before September 16, 1938, at which time she was living in LaGrange, Georgia; that in 1933 she inquired of a sister of the insured, who lived in Philadelphia, whether she knew of the whereabouts of the insured, and was informed that she had heard nothing from him and did not know where he was; that before the filing of the claim with the insurance company she did not inquire as to the address of the father and mother of the insured; that she did not give to the insurance company all of the letters she had from her husband, but gave them the last one, which was the only one they requested; that the insured has sisters other than those testified about, but she does not know where they live, nor has she inquired of them whether they have heard from the insured; that after she was notified that her husband was going to a hospital in St. Louis, she wrote to the Government hospital there, because she had been informed that the insured had a government job; and that she received from it no information about her husband.

Clara Harris, testified for the plaintiff, in substance, that she is a sister of the insured; that she keeps in touch with her sisters by mail, and sees her father and mother every day; that she has not heard from the insured since he left Atlanta; that her mother has often expressed the desire to know the location of the insured, as has his father; that another sister asked her if she ever heard from the insured; that the other sisters also made inquiry of her; that she heard from one of her sisters that she had heard that the insured lived in Baltimore; and that she wrote to Baltimore to try to locate the insured, but was unsuccessful. Minnie Fox testified, in substance, that she lived in Chicago, and knew the insured; that she inquired in the neighborhood of the return address

given to the plaintiff in the last letter from the insured, and could find no one who knew or had ever seen either the insured or the Haygood mentioned in the address; that she was informed at the address given that mail had been coming for the insured; and that she had been returning it for two years. The letters introduced in evidence from the insured requested a picture of his wife and children, and stated that money was enclosed.

J. Thomas Walker testified for the defendant, that he had been handling the matter of J. F. Jenkins; that the plaintiff had turned over to him the letters from the insured, and that he was trying to locate the insured, and had made inquiry, but was unable to locate him; and that at the time suit was filed the company was still trying to locate him.

The jury returned a verdict awarding to the plaintiff the face amount of the policy, damages, and attorney's fees. A motion for new trial was overruled, and the defendant excepted.

1. The presumption of the duration of life, with respect to a person of whom no account can be given, ends at the expiration of seven years from the time when he was last heard of as living. Code, § 38-118; *Hansen* v. *Owens,* 132 *Ga.* 648 (64 S. E. 800).

2. The jury was authorized to find from the evidence that the insured had been absent from his residence in Atlanta, Georgia, for a period of more than seven years, and had not been heard from during that time by his family and those most likely to hear from him, although diligent effort had been made to locate him; that diligent search and inquiry had been made at his last known address in Chicago, Illinois, where he had gone in search of work; that the effort to locate or hear of him there had been unsuccessful; and that the presumption of his death raised by the evidence of his absence for seven years had not been rebutted. See *National Life &c. Co.* v. *Hankerson,* 49 *Ga. App.* 350 (175 S. E. 590); *American National Insurance Co.* v. *Parker,* 55 *Ga. App.* 346 (187 S. E. 843); *Pfenning* v. *Life Ins. Co. of Va.,* 60 *Ga. App.* 706 (4 S. E. 2d, 682).

3. The exceptions to the charge of the court show no error.

4. Under the law, the evidence was sufficient to authorize the verdict for the plaintiff in the amount of the insurance policy, but not for damages and attorney's fees. The judgment is affirmed on condition that the plaintiff write off the recovery for damages

and attorney's fees before or when the judgment of this court is made the judgment of the trial court; otherwise the judgment is reversed.

*Judgment affirmed on condition. Stephens, P. J., and Sutton, J., concur.*

FELTON, J., dissenting. The fact that one has not been heard from at his last place of residence, by those who would most likely hear from him, may not be proved by hearsay testimony. In this case it was sought to prove the absence of the insured by the testimony of the plaintiff, the divorced wife of the insured, and one of his sisters, to the effect that neither they nor insured's living father and mother and other sisters had heard from him. The addresses of some of the other sisters and the father and the mother were known to the plaintiff. Legal evidence that the insured had not been heard from by only part of those who admittedly would most likely have heard, especially his father and mother (who were within the jurisdiction of the court), is not sufficient to raise the presumption of death when the testimony of others is available. There is a great difference between showing by hearsay a vain search for a person among mere friends and acquaintances, and showing that a particular friend or relative, from whom it is claimed a person would likely have heard, has not heard from him, by what such friend or relative stated extrajudicially and not under oath.